GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KRISTINE A. FORDERER, SBN 278745
kforderer@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

MAXIMILIAN SLADEK DE LA CAL, SBN 324961
msladekdelacal@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6527
Facsimile: (310) 883-6500

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARY YOON, ET AL.,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 5:24-cv-02612-NC

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Date: September 18, 2024
Time: 11:00 a.m.
Courtroom 5, 4th Floor

Action Filed: March 27, 2024
Honorable Nathanael M. Cousins

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 18, 2024, at 11:00 a.m., before the Honorable Nathanael M. Cousins of the United States District Court for the Northern District of California, Courtroom 5, San Jose Courthouse, Defendant Meta Platforms, Inc., will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Should the complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Meta's Pixel ..... 2

B. Meta's Policies ..... 2

C. Plaintiffs' Allegations ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of The Web-Browsing Data Alleged In Their Complaint. ..... 7

A. Plaintiffs Consented To Meta's Receipt Of Their Web-Browsing Data By Creating A Facebook Account And Using Meta's Services. ..... 7

B. Plaintiffs' Web-Browsing Data Is Not Protected By Statute. ..... 8

II. Each Of Plaintiffs' Claims Also Fails For Numerous Other Reasons. ..... 9

A. Plaintiffs Fail To State A Wiretapping Claim Under The Federal Wiretap Act (Count I). ..... 10

B. Plaintiffs Fail To State A Claim Under The California Invasion Of Privacy Act (Counts II & III). ..... 13

C. Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts IV & V). ..... 14

D. Plaintiffs Fail To State A Negligence Claim (Count VI). ..... 19

CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5, 6, 19

*Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5, 6

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 13

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 10, 11

*C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) .......... 22

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166 (1998) .......... 19

*Carroll v. Chick-fil-A, Inc.*, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 8, 9

*In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 636 (D. Ariz. 2004) .......... 15

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 14

*Dent v. Nat'l Football League*, 902 F.3d 1109 (9th Cir. 2018) .......... 19

*Directv Inc. v. Little*, 2004 WL 1811153 (N.D. Cal. Aug. 12, 2004) .......... 17, 18

*DIRECTV Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2005) .......... 15

*In re DIRECTV, Inc.*, 2004 WL 2645971 (N.D. Cal. July 26, 2004) .......... 15

*DirecTV, Inc. v. Treworgy*, 373 F.3d 1124 (11th Cir. 2004) .......... 15

*Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 10, 11, 19

*In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 11



Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

**Page(s)**

*F.B.T. Prods., LLC v. Aftermath Recs.*,
621 F.3d 958 (9th Cir. 2010)....................8

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005)....................20

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002)....................13

*Flowers v. Tandy Corp.*,
773 F.2d 585 (4th Cir. 1985)....................15

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)....................22

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................11

*Hill v. Nat'l Collegiate Ath. Ass'n*,
7 Cal. 4th 1 (1994)....................7

*Huynh v. Quora, Inc.*,
2020 WL 7408230 (N.D. Cal. June 1, 2020)....................22

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................22

*Johnson v. Honeywell Int'l Inc.*,
179 Cal. App. 4th 549 (2009)....................19

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)....................10, 11

*In re Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)....................15

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)....................3, 7

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016)....................15, 16

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................1, 6, 8

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)....................1, 6, 8, 10, 11, 16, 17, 18, 19, 20, 21, 22

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018)....................19, 20, 21

## TABLE OF AUTHORITIES

**Page(s)**

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022)....................22

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014)....................13

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)....................14

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)....................7

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)....................12

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021)....................22

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................14

*Rickwalder v. Meta Platforms, Inc.*,
2022 WL 22462351 (Cal. Sup. Ct. Sept. 15, 2022)....................9

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)....................10, 11

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015)....................6

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................1, 6, 7, 8, 17

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)....................12

*Tarasoff v. Regents of Univ. of Cal.*,
17 Cal. 3d 425 (1976)....................20

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)....................18, 19

*United States v. Lande*,
968 F.2d 907 (9th Cir. 1992)....................17

*United States v. Schweihs*,
569 F.2d 965 (5th Cir. 1978)....................17, 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................14, 15, 16

## TABLE OF AUTHORITIES

**Page(s)**

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 12, 13

**Statutes**

18 U.S.C. § 2510(4) ........ 12

18 U.S.C. § 2510(8) ........ 12

18 U.S.C. § 2511(1) ........ 15

18 U.S.C. § 2511(1)(a) ........ 10

18 U.S.C. § 2511(2)(d) ........ 7, 10, 11

18 U.S.C. § 2512(1)(b) ........ 14, 15, 17, 18

18 U.S.C. § 2520(a) ........ 15, 16

18 U.S.C. § 2710(a)(1) ........ 9

18 U.S.C. § 2710(a)(4) ........ 8

Cal. Civ. Code § 1799.3(a) ........ 9

Cal. Pen. Code § 631(a) ........ 7, 13

Cal. Pen. Code § 632(a) ........ 7, 13

Cal. Pen. Code § 635(a) ........ 7, 14, 17, 18

Cal. Pen. Code § 637.2(a) ........ 7, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This is a copycat complaint challenging web developers' use of a common internet tool called the "Meta Pixel." Like the plaintiffs in several other cases pending in this district, plaintiffs claim that web developers' use of the Pixel to send certain information to Meta constituted wiretapping and invasion of privacy by Meta. But *unlike* the plaintiffs in those other cases, the plaintiffs here do not plausibly allege that the data Meta received about them is *sensitive* in any way. That forecloses plaintiffs' claims: As the Ninth Circuit has held, claims involving routine web-browsing data are not actionable because Meta's policies "contain numerous disclosures related to information collection on third-party websites," and all Meta users (including plaintiffs) must and do "consent" to that information collection. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). Courts have distinguished this general rule and allowed cases to survive dismissal only where the plaintiffs allege Meta received their *sensitive, protected* information, like personal tax-filing and health information. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (N.D. Cal. Mar. 25, 2024) (addressing "sensitive financial information" sent by tax-filing service providers); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (addressing "protected health information from a medical provider").

Plaintiffs here do not and cannot clear that bar. They allege only that Meta received routine web-browsing information showing the videos they watched on news and home-improvement websites like USAToday.com and HGTV.com, which host content about things like dolphins and gardening. Plaintiffs never even allege what videos they watched; instead, they assert *all* online video-viewing data is inherently confidential. That far-reaching theory has no legal support. Plaintiffs attempt to transform their web-browsing data into "sensitive" data by arguing that video-viewing information is protected by various state and federal statutes. But those statutes are irrelevant: they do not apply to online clips accessible on the public news, sports, or home-improvement sites plaintiffs identify.

Plaintiffs also fail to allege multiple other essential elements of their claims. The Court need not reach those issues if it dismisses based on plaintiffs' failure to allege Meta received any sensitive, protected information, but they provide independent bases for dismissal.

This Court should dismiss the complaint with prejudice.

## BACKGROUND

### A. Meta's Pixel

This case centers on a common online analytics tool offered by numerous companies and used across industries called a "pixel." Meta's version of this common tool, the "Meta Pixel," is a free, publicly available piece of computer code that "website owners can install on their websites to measure certain actions taken by users on their own websites, such as online purchases." First Am. Compl. ("Compl.") ¶ 24; *see id.* ¶¶ 25, 30, 43, 46.

Website developers, not Meta, choose whether and how to install and configure the Pixel on their websites. Compl. ¶¶ 24, 28–29. When "someone takes an action that the website developer has chosen to measure on its website, the Meta Pixel is triggered and sends Meta certain data, called an 'Event.'" *Id.* ¶ 29 (quotation marks, alteration, and emphasis omitted). "Events" can measure actions like the web pages a person navigates to or the buttons a person clicks on those pages. *Id.* ¶¶ 26, 33. Meta "attempts to match the Events it receives to Meta users," and web developers "can then choose to show ads to users who have taken a certain action on their own website"—so, for example, a website selling shoes might use the Pixel so that it can show ads to individuals who viewed a webpage for a particular pair of shoes or clicked a button to put those shoes in their online shopping cart, but did not buy them. *Id.* ¶ 29 (quotation marks omitted); *see id.* ¶ 44. This tool can help web developers "integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services." *Id.* ¶ 23 (quotation marks omitted).[1]

### B. Meta's Policies

When users sign up for a Facebook account, they agree to Meta's Terms of Service, Data Policy (now called the "Privacy Policy"), and Cookies Policy, all of which are discussed and incorporated by reference in the complaint. Meta Request for Judicial Notice ("RJN") Exs. 1–3; *see, e.g.*, Compl.

---

[1] This case focuses on several websites' use of the Meta Pixel tool. The complaint fleetingly alleges that each website also installed "related business tools" that Meta offers, which plaintiffs allege "function the same" as the Pixel. Compl. ¶¶ 48, 53. Notably, as plaintiffs allege, one of those tools—the Meta SDK—is used "[f]or mobile applications," not websites, and plaintiffs do not allege they used any mobile applications. *Id.* ¶ 48. Given plaintiffs' allegations, this motion focuses on the Pixel, without conceding that these tools all "function the same." *Id.*

¶¶ 80–82; *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 & n.1, 4 (N.D. Cal. Oct. 3, 2022). Those policies provide information about Meta's collection and use of data, including through the Pixel. They disclose, clearly and repeatedly, that Meta receives information from third-party web developers about users' activity on their websites, and that Meta uses this information to facilitate advertising.

***Terms of Service.*** Meta's Terms of Service "govern [the] use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer." Meta RJN Ex. 1. The Terms explain that Meta "do[esn't] charge you to use Facebook or the other products and services covered by these Terms," and that "[i]nstead, businesses and organizations pay us to show you ads for their products and services." *Id.* By using Meta's products, Facebook users "agree that [Meta] can show you ads that we think will be relevant to you and your interests." *Id.* Meta discloses that it "use[s] your personal data to help determine which ads to show you," and the Terms link to the Data Policy to "explain[] how we collect and use your personal data to determine some of the ads you see." *Id.*[2]

***Data Policy.*** The Data Policy "describes the information [Meta] process[es] to support Facebook, Instagram, Messenger and other products and features." RJN Ex. 2. It tells users that "[a]dvertisers, app developers, and publishers"—whom the policy refers to as "partners"—"can send [Meta] information through Facebook Business Tools they use," including "the Facebook pixel."[3] The Data Policy further explains that "[t]hese partners provide information about your activities off Facebook—including information about your device, websites you visit, purchases you make, the ads you see, and how you use their services—whether or not you have a Facebook account or are logged into Facebook." *Id.* "For example," the policy continues, "a game developer could use [Meta's] API to tell [Meta] what games you play, or a business could tell [Meta] about a purchase you made in its store." *Id.* The Data Policy also discloses that Meta "use[s] your connections, preferences, interests and activities based on the data [Meta] collect[s] and learn[s] from you and others" to "select and personalize ads, offers and

[2] Plaintiffs allege that Meta's Pixel was installed on each of the websites at issue in 2021 or 2022. Compl. ¶¶ 58, 67, 70, 73, 76. Meta's request for judicial notice includes each version of the Terms of Service, Data Policy (now called the Privacy Policy), and Cookies Policy in place between January 1, 2021 and the present. This motion quotes the policies in effect as of January 1, 2021; the relevant disclosures have not materially changed.

[3] Meta's name changed from "Facebook" to "Meta" in late 2021. The "Facebook Pixel" is now called the "Meta Pixel."

other sponsored content that [Meta] show[s] you." *Id.*; *see also id.* ("We use the information we have (including your activity off our Products, such as the websites you visit and ads you see) to help advertisers and other partners measure the effectiveness and distribution of their ads and services, and understand the types of people who use their services and how people interact with their websites, apps, and services."); Compl. ¶ 44 (same). Meta "require[s] each of these partners to have lawful rights to collect, use and share your data before providing any data to [Meta]." RJN Ex. 2. The Data Policy also links to the Cookies Policy for additional information. *Id.*

***Cookies Policy.*** Cookies are "small pieces of text used to store information on web browsers," and the Cookies Policy provides additional details about how Meta uses cookies and similar technologies. RJN Ex. 3. As relevant here, the policy discloses that cookies enable Meta to offer its products and "understand the information [Meta] receive[s] about you, including information about your use of other websites and apps, whether or not you are registered or logged in." *Id.* It describes how cookies "help [Meta] show ads" and "deliver ads to people who have previously visited a business's website, purchased its products or used its apps." *Id.* The policy specifically describes the cookie used to enable the Meta Pixel—the "'_fbp' cookie"—and notes that it "identifies browsers for the purposes of providing advertising and site analytics services," and to "help measure the performance of ad campaigns for businesses that use the Facebook Products." *Id.*; *see also id.* ("Cookies also allow [Meta] to provide insights about . . . the people who interact with the ads, websites and apps of [Meta's] advertisers and the businesses that use the Facebook Products."). It reiterates that "[Meta's] business partners may also choose to share information with [Meta] from cookies set in their own websites' domains," including through the "_fbp" cookie used for the Meta Pixel, and that these cookies are used for "ads" and "analytics." *Id.* The policy discloses again that Meta "receives information when you visit those sites and apps, including device information and information about your activity." *Id.* And it explains that users "can review your Off-Facebook activity, which is a summary of activity that businesses and organizations share with [Meta] about your interactions with them, such as visiting their apps or websites." *Id.* (specifically listing "Facebook Pixel" as a tool used "to share this information with [Meta]").

### C. Plaintiffs' Allegations

Plaintiffs are three Facebook users from California. Compl. ¶¶ 7–9. The first, Mary Yoon,

alleges that she visited USAToday.com and watched video content on that website. *Id.* ¶ 7. She alleges "the Meta Pixel was installed on USAToday.com, which transmitted website visitor usage information to Meta, including video viewing data." *Id.* The second plaintiff, William Martin, similarly alleges that he visited USAToday.com as well as HGTV.com and watched video content, and that the Meta Pixel transmitted this information to Meta. *Id.* ¶ 8. The third plaintiff, Kat Walker, alleges the same thing about USAToday.com, HGTV.com, Bloomberg.com, and PBS.com. *Id.* ¶ 9.

None of the plaintiffs allege what video content they watched, but they provide examples of general types of video-viewing data that the websites they visited *might* have shared. USAToday.com, "a news website," allegedly shared data when someone visiting the website watched "a video titled 'Dolphins treat a group of paddleboarders to an aerial display off England's coast.'" Compl. ¶¶ 69, 71. HGTV.com, which hosts "programing related to home improvement, design, and real estate," allegedly shared data when visitors watched "a video called 'Plants for a Shady Landscape.'" *Id.* ¶¶ 57, 60. Bloomberg.com and PBS.com, two more "news website[s]," allegedly shared data for videos about Olympic swimmer Michael Phelps and updates on global news, respectively. *Id.* ¶¶ 66, 68, 72, 74.

Plaintiffs assert that "Meta secretly intercepted the video viewing history of visitors to the subject websites," and they seek to bring claims on behalf of themselves and "everyone in the United States who watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, or PBS.com." Compl. ¶¶ 1, 3.[4] They assert six claims: three wiretapping and eavesdropping claims under the federal Wiretap Act and the California Invasion of Privacy Act; two claims that the Pixel is an unlawful spying device under those same laws; and a negligence claim. *Id.* ¶¶ 112–75.

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations. *Id.* at 678–79. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it

[4] None of the named plaintiffs allege that they visited or watched any videos on 247Sports.com.

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

**ARGUMENT**

Two principles govern this case. First, as the Ninth Circuit has confirmed, Meta's receipt of routine web-browsing data is lawful and does not give rise to any actionable claim because "[a] reasonable person viewing [Meta's] disclosures would understand that [Meta] maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes," and "[k]nowing authorization of the practice constitutes Plaintiffs' consent." *Smith*, 745 F. App'x at 8–9. Second, where plaintiffs allege Meta received their *sensitive*, *protected* data, courts have distinguished this general rule and allowed claims to survive dismissal because there is a fact question about whether Meta's disclosures sufficiently conveyed that it might receive this *sensitive* information. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (addressing "sensitive financial information" sent by tax-filing service providers); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794 (addressing "protected health information from a medical provider").

This case falls squarely into the first bucket. While plaintiffs recycle claims and allegations from other lawsuits against Meta addressing *sensitive* data—indeed, much of the complaint is copied and pasted directly from *In re Meta Pixel Tax Filing Cases*—those suits were able to proceed only because the court determined the plaintiffs in those cases plausibly alleged Meta received sensitive, protected information about them. This complaint omits that critical piece. Plaintiffs cursorily label their data "sensitive," Compl. ¶¶ 2, 84, but the complaint does not allege Meta received any information about plaintiffs that is plausibly sensitive or protected. Instead, plaintiffs point only to routine web-browsing data that the Ninth Circuit has already held is *not* sufficient to state a claim. *Smith*, 745 F. App'x at 8. Plaintiffs' attempt to transform that web-browsing data into "sensitive" data by pointing to inapplicable statutes fails.

Plaintiffs also fail to allege numerous other essential elements for each of their claims, which supplies independent bases to dismiss each one of them. This Court should dismiss the complaint with prejudice.

## I. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of The Web-Browsing Data Alleged In Their Complaint.

### A. Plaintiffs Consented To Meta's Receipt Of Their Web-Browsing Data By Creating A Facebook Account And Using Meta's Services.

This case is foreclosed by the Ninth Circuit's decision in *Smith*: plaintiffs' consent to Meta's receipt of their web-browsing data defeats each of their claims. *See* 18 U.S.C. § 2511(2)(d); Cal. Penal Code §§ 631(a), 632(a), 635(a), 637.2(a); *Hill v. Nat'l Collegiate Ath. Ass'n*, 7 Cal. 4th 1, 26 (1994) (noting "maxim of the law" that "no wrong is done to one who consents"). Plaintiffs agreed to Meta's policies by creating a Facebook account and using Meta's services. *See* Compl. ¶¶ 7–9 (alleging each plaintiff has a Facebook account); *Lloyd*, 2022 WL 4913347, at *1 & n.1, 4 (Facebook users agree to Meta's terms). And as the Ninth Circuit has held, a "reasonable person" viewing Meta's policies "would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith*, 745 F. App'x at 8–9; *see supra* 3–4. This "[k]nowing authorization of the practice constitutes Plaintiffs' consent." *Smith*, 745 F. App'x at 9; *see also, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (dismissing wiretapping claims where "terms plainly disclose that partners . . . may install tracking software to collect data concerning users' activities across websites"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1211–14 (N.D. Cal. 2014) (Koh, J.) (similar).

Plaintiffs try to circumvent that straightforward conclusion by asserting their data is "sensitive and confidential," and that Meta's policies do not disclose that Meta may receive *sensitive* information. Compl. ¶ 2; *see id.* ¶¶ 80–82, 84. But that conclusory assertion is not remotely plausible. The websites at issue here are general "news" and "home improvement" sites. *Id.* ¶¶ 57, 66, 69, 72, 75. The sort of videos that plaintiffs say are posted on those websites—things like swimming dolphins and "Plants for a Shady Landscape," *id.* ¶¶ 60, 71—are not plausibly "sensitive" or "confidential."

Plaintiffs never even allege what video content *they* actually watched; their theory, instead, is that *all* online video-viewing data is inherently sensitive. That is clearly wrong. In *Smith*, for example, the Ninth Circuit held that even data showing the plaintiffs "searched and viewed publicly available health information" was not "so different or sensitive" that it could vitiate consent. 745 F. App'x at 9.

The court thus concluded that this data fell "within the scope of Plaintiffs' consent to Facebook's Terms and Policies." *Id.* Browsing data showing users viewed videos about dolphins and gardening is even *less* sensitive than the data at issue in *Smith*.

That sets this case apart from other lawsuits alleging receipt of *sensitive* information, like personal tax-filing or health data that a person shares with their tax-service or medical provider. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (addressing "sensitive financial information" sent by tax-filing service providers); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794 (addressing "protected health information from a medical provider"). This case does not involve data from plaintiffs' tax-service, health, or any other provider that could reveal personal details like tax-filing information or patient status; it instead involves public news websites. That is nothing more than "the general internet browsing at issue in *Smith*," which is exactly "the data collection that plaintiffs agreed to." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794.[5]

### B. Plaintiffs' Web-Browsing Data Is Not Protected By Statute.

Plaintiffs nevertheless assert their web-browsing data on news websites should be "deemed to be sensitive and confidential" under "California and federal law," citing the federal Video Privacy Protection Act ("VPPA") and a similar state-law provision. Compl. ¶ 2. But those statutes are irrelevant because plaintiffs do not assert any claims under either one. In any event, plaintiffs do not and could not plausibly allege that either of those laws applies here.

The VPPA is inapplicable for at least two reasons. First, the VPPA applies to "video tape service provider[s]," and courts have limited that term to entities whose business centers on purveying video services—not entities that merely host videos on their websites. 18 U.S.C. § 2710(a)(4); *see, e.g.*, *Carroll v. Chick-fil-A, Inc.*, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024) (collecting cases). Plaintiffs allege the websites at issue here "host[]" videos, Compl. ¶¶ 57, 66, 69, 72, 75, but they do

---

[5] Meta respectfully believes those cases were wrongly decided: Meta's terms broadly describe third parties' ability to send information about users' activities on their websites, and "[a] contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010). But even assuming they are correct, the routine web-browsing information at issue in this case is clearly unlike personal tax-filing or health information. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (concluding "[c]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general").

not allege those websites are "video tape service provider[s]" under the VPPA. Second, the VPPA is limited to the provision of videos to "consumer[s]," defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiffs do not allege that they rented, purchased, or subscribed to anything, and this element is not satisfied where, as here, plaintiffs allege only that they "viewed publicly available, free videos on a website." *Carroll*, 2024 WL 1091193, at *2; *see also, e.g.*, *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (dismissing VPPA claim based on "casual consumption of web content").[6]

The California law plaintiffs cite, Cal. Civ. Code § 1799.3(a), is even "narrower" than the VPPA. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023). It is limited to entities that provide "video recording sales or rental services," and it "applies only to entities providing video materials to customers in exchange for money." *Id.* at 286 (dismissing claim where plaintiff "never paid for a People.com subscription" (quotation marks omitted)). Like the VPPA, it does not "deem to be sensitive and confidential" *every* video on *every* site that a person happens to watch. *Contra* Compl. ¶ 2.

As in *Smith*, because plaintiffs consented to Meta's receipt of information about their activity on third-party websites, and because plaintiffs have not plausibly alleged that any of the data at issue here exceeds the scope of consent, all of their claims should be dismissed.

## II. Each Of Plaintiffs' Claims Also Fails For Numerous Other Reasons.

All of plaintiffs' claims fail in any event because plaintiffs also fail to allege essential elements for each one. Although the Court need not reach these further shortfalls in plaintiffs' claims if it dismisses based on consent, they each provide an independent ground for dismissal.

---

[6] A state trial court's decision in *Rickwalder v. Meta Platforms, Inc.*, 2022 WL 22462351 (Cal. Sup. Ct. Sept. 15, 2022)—another case concerning the Meta Pixel brought by the same plaintiffs' counsel—underscores why this case must be dismissed. In *Rickwalder*, the court held that the plaintiffs consented to Meta's receipt of their non-sensitive web-browsing data and dismissed claims based on data Meta allegedly received from CNN.com. *Id.* at *15. The court allowed claims only for one plaintiff's data that was allegedly sent from HBO.com "in violation of the VPPA." *Id.* The data alleged here falls squarely on the unprotected side of that divide: unlike HBO and its subscribers, the websites at issue here are not "video tape service providers" and the people who browse them are not "consumers," so the VPPA does not apply.

### A. Plaintiffs Fail To State A Wiretapping Claim Under The Federal Wiretap Act (Count I).

The federal Wiretap Act prohibits the intentional interception of wire, oral, and electronic communications under certain circumstances. 18 U.S.C. § 2511(1)(a). Plaintiffs allege Meta "intercept[ed]" the "internet communications that [p]laintiffs and [c]lass members were sending and receiving while navigating the subject websites." Compl. ¶ 118; *see id.* ¶¶ 112–28. In addition to plaintiffs' consent, this claim fails for two more reasons: The owners of the websites plaintiffs allegedly visited consented to sharing information with Meta, and plaintiffs do not allege Meta received the contents of their communications.

***One-party consent.*** The federal Wiretap Act is a one-party consent statute, so there cannot be a violation if even "*one* of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiffs allege Meta intercepted communications between them and the websites they visited. Compl. ¶¶ 117–19. But as plaintiffs admit, the Pixel is a tool that "*website owners can install* on their websites to measure certain actions taken by users on their own websites." *Id.* ¶ 24 (emphasis added); *see also id.* ¶ 43 ("Meta offers these technologies to companies for free"). Website owners choose whether and how to install the Pixel, including which information they want to send to Meta. *See id.* ¶ 29. Independent of Meta's policies, website owners' decision to share information with Meta using the Pixel establishes one-party consent and precludes plaintiffs' wiretapping claim. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) ("Oracle's customers chose to deploy Oracle's tools on their websites, and it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'"); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *5 (N.D. Cal. May 21, 2021) (similar).

In cases challenging healthcare and tax-service providers' use of Meta's Pixel, two courts concluded discovery was necessary to determine whether those providers "*actually* consented to the sending of sensitive" information. *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *5 (N.D. Cal. Sept. 7, 2023); *see In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5–6 (following *Doe*). In the healthcare case, Judge Orrick acknowledged Chief Judge Seeborg's dismissal of a similar claim in *Katz-Lacabe*, but he concluded (at *5) the healthcare case was "closer to" *Brown v. Google LLC*, 685

F. Supp. 3d 909 (N.D. Cal. 2023). In *Brown*, the court rejected a one-party consent argument at the dismissal stage because Google's disclosures could have suggested that its tools would *not* collect users' information when users were in "private browsing mode," which created a fact question about whether "website developers knew about Google's collection of private browsing data." *Id.* at 934. Judge Orrick concluded the same could be true for "sensitive healthcare information." *Doe*, 2023 WL 5837443, at *5. Judge Pitts also reached that conclusion in the consolidated tax case for "sensitive financial information." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5–6.

Meta respectfully submits those cases were wrongly decided: as Chief Judge Seeborg has explained, *web developers'* consent cannot be "dependent on a *user*'s privacy expectations" based on Meta's policies. *Katz-Lacabe*, 2024 WL 1471299, at *4 (rejecting this "consent-upon-consent" theory). But regardless, the analyses in the healthcare and tax cases based on *sensitive* data are inapplicable here because the data at issue—web-browsing data on news sites—is precisely the sort of routine information that web developers use the Pixel to send, and the complaint alleges nothing to suggest "developers somehow misapprehend the product's general function or purpose." *Rodriguez*, 2021 WL 2026726, at *5. That puts this case squarely under *Katz-Lacabe* and cases like it, rather than *Brown* or the healthcare and tax cases.

The complaint asserts in conclusory fashion that Meta's alleged interceptions "were unlawful and tortious," Compl. ¶¶ 126, 136—an apparent reference to an exception to the federal Wiretap Act's one-party consent rule for situations where a communication "is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). But the complaint alleges no facts to support that conclusion, and in any event this crime-tort exception is inapplicable here for two reasons. *First*, numerous cases going back more than twenty years have held the crime-tort exception does not apply where a defendant's "underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Katz-Lacabe*, 2024 WL 1471299, at *3; *see also, e.g.*, *Rodriguez*, 2021 WL 2026726, at *6 n.8; *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001). That is precisely what plaintiffs allege here. Compl. ¶ 45 ("Meta uses the data that it collects from the pixel to increase its ad revenue."); *see also, e.g.*, *id.* ¶¶ 89, 91. *Second*, the Ninth Circuit has

made clear that for the crime-tort exception to apply, a defendant's "criminal or tortious purpose must be separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). The "focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Plaintiffs assert that "[t]he interception by Meta in the aforementioned circumstances were [sic] unlawful and tortious," Compl. ¶ 126, but even if that were true, it focuses on "the interception itself," not any "separate and independent" criminal or tortious purpose. *Newman*, 51 F.4th at 1136 (quotation marks omitted). Nor does it suffice for plaintiffs to allege that "Meta used the contents of the communications knowing or having reason to know that such information was obtained through the interception of electronic communications." Compl. ¶ 127. Meta's use of data received from third-party developers using the Pixel is not independently criminal or tortious; Meta's policies disclose that practice in detail. *Supra* 3–4. Plaintiffs' suggestion that this use becomes unlawful merely because an interception itself is allegedly unlawful is exactly the sort of bootstrapping the "separate and independent" requirement forbids. *Newman*, 51 F.4th at 1136.

***Contents of a communication.*** Plaintiffs' wiretapping claim fails for the additional reason that they do not allege Meta received the contents of their communications. An "interception" under the federal Wiretap Act occurs only if a defendant receives "the *contents* of any wire, electronic, or oral communication," defined to include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8) (emphasis added). The Ninth Circuit has held that "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Here, plaintiffs allege only that Meta received data showing their *activity* while browsing the web—*i.e.*, which web pages they viewed, which buttons they clicked, and which videos they watched. *See* Compl. ¶ 119. But none of that web-browsing activity is "the intended message conveyed" of any "communication." *Zynga*, 750 F.3d at 1106. While URLs may sometimes *contain* contents (for example, if the URL contains the search query a person typed into Google's search box—such as

https://google.com/search?q=**<u>where+do+dolphins+swim</u>**), a URL that merely reflects the web pages a person has visited is not itself content. *Id.* at 1107–08 (the "webpage address identifies the location of a webpage a user is viewing on the internet" and is not "contents"); *accord In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (holding "the file path and video title information contained in the URLs allegedly intercepted" are not contents). Plaintiffs' allegations that the websites they visited "transmitted website visitor usage information to Meta, including video viewing data," Compl. ¶¶ 7–9, thus do not show that Meta received the contents of any communication. And plaintiffs' other allegations about Meta's receipt of identifying information, such as their "email address and name," Compl. ¶ 119, concern classic "record" information, not "contents." *See Zynga*, 750 F.3d at 1106–07 ("There is no language in ECPA equating 'contents' with personally identifying information.").

**B. Plaintiffs Fail To State A Claim Under The California Invasion Of Privacy Act (Counts II & III).**

Plaintiffs allege Meta violated § 631 of the California Invasion of Privacy Act ("CIPA")—a state-law analogue to the federal Wiretap Act—by intercepting the "contents or meaning" of their electronic communications. Cal. Pen. Code § 631(a); *see* Compl. ¶¶ 129–40. They also allege Meta violated CIPA § 632 by "eavesdrop[ping] upon or record[ing]" their "confidential communication[s]." Cal. Pen. Code § 632(a); *see* Compl. ¶¶ 141–47. Neither claim is plausibly alleged.

***Contents of a communication.*** CIPA § 631, like the federal Wiretap Act, is limited to "the contents or meaning" of a communication. Cal. Pen. Code § 631(a); *see Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." (quotation marks omitted)). This claim therefore fails for the same reasons as the federal Wiretap Act claim. *See supra* 12–13.

***Confidential communications.*** CIPA § 632 applies only to eavesdropping on "a *confidential* communication." Cal. Pen. Code § 632(a) (emphasis added). Communications are "confidential" under § 632 only if "a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002). As discussed above, the web-browsing data at issue here is not "confidential." *See supra* 7–9. Indeed, "in

California, courts have developed a presumption that Internet communications"—specifically including "browsing activity"—"do not reasonably give rise" to an expectation of confidentiality. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases and holding "browsing activity" is not confidential); *see also, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018) (emails not "confidential"); *People v. Nakai*, 183 Cal. App. 4th 499, 517–18 (2010) (instant messages, including photos, not confidential).

Plaintiffs cannot plausibly rebut that presumption here. They allege they visited news websites with videos about swimming dolphins, gardening, and the like. There is "[n]othing about these particular internet communications" that "warrants a deviation from th[e] general rule." *Revitch*, 2019 WL 5485330, at *3. That is especially true given Meta's disclosures that third-party websites could share information about plaintiffs' browsing activity. *See, e.g.*, *Nakai*, 183 Cal. App. 4th at 518 (pointing to disclosures in Yahoo!'s privacy policy as one reason instant messages were not "confidential").

### C. Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts IV & V).

Plaintiffs assert that Meta violated 18 U.S.C. § 2512 and CIPA § 635, which impose *criminal* penalties on "any person who intentionally . . . manufactures . . . any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications." 18 U.S.C. § 2512(1)(b); *see* Cal. Pen. Code § 635(a); Compl. ¶¶ 148–61. But there is no private right of action to enforce either statute. In any event, plaintiffs do not plausibly allege a violation of either one. Both laws are designed to punish individuals who create contraband spying devices, not companies that offer standard software tools. Plaintiffs unsurprisingly cannot plead essential elements of either claim.

***No private right of action.*** Plaintiffs' claims under these provisions fail out of the gate because there is no private right of action to enforce these criminal provisions. Plaintiff Yoon is well aware of that obstacle, because another court dismissed on this ground when Yoon (represented by the same counsel) brought the same claims against Lululemon and a software provider called Quantum Metric. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084–85 (C.D. Cal. 2021).

"By its plain terms, § 2512(1) of the Wiretap Act does not provide for a private right of action."

*Yoon*, 549 F. Supp. 3d at 1084. And as "the three circuit courts that have considered the question have all concluded," the section of the federal Wiretap Act authorizing a private cause of action (§ 2520) provides one for unlawful *interceptions* under § 2511—which is why plaintiffs have a private cause of action for wiretapping—but does *not* provide one for alleged violations of § 2512. *Id.* (quotation marks omitted) (citing *DIRECTV Inc. v. Robson*, 420 F.3d 532, 539 & n.31 (5th Cir. 2005); *Luis v. Zang*, 833 F.3d 619, 636 (6th Cir. 2016); and *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004)).[7] The statutory text makes that clear. Section 2511 (the interception provision) punishes defendants who unlawfully "intercept[]," "disclose[]," or "use[]" electronic communications. 18 U.S.C. § 2511(1). Section 2512 (the spying-device provision) separately punishes defendants who "manufacture[], assemble[], possess[], or sell[]" unlawful spying devices. *Id.* § 2512(1)(b). And § 2520 (the private-cause-of-action provision) provides that "any person whose wire, oral, or electronic communication is *intercepted, disclosed, or intentionally used* in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in *that violation*"—a clear reference to the actions prohibited in the interception provision. *Id.* § 2520(a) (emphases added). In contrast, Section 2520 says nothing about the spying-device provision. Thus, "there is no private right of action for the violation of § 2512(1) of the Wiretap Act." *Yoon*, 549 F. Supp. 3d at 1085.

Nor is there any private right of action under California's analogue provision, CIPA § 635. *Yoon*, 549 F. Supp. 3d at 1085. As another court explained when Yoon asserted this same claim against Lululemon and its software provider, the analysis here is even "more straightforward": "[O]nly a person 'who has been injured by a violation of this chapter' may assert a civil claim." *Id.* (quoting Cal. Pen. Code § 637.2(a)). Plaintiffs do not allege they were injured by Meta's *creation* of the Pixel, but rather by certain websites' allegedly improper *use* of the Pixel. "For that reason, CIPA § 637.2 does not provide Yoon with a private right of action to enforce CIPA § 635." *Id.*

Although Judge Pitts reached a contrary conclusion in the tax case, Meta respectfully submits

[7] *See also, e.g.*, *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *In re DIRECTV, Inc.*, 2004 WL 2645971, at *8 (N.D. Cal. July 26, 2004); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 636, 644–45 (D. Ariz. 2004); *cf. Flowers v. Tandy Corp.*, 773 F.2d 585, 588–89 (4th Cir. 1985) (concluding that a prior version of § 2520 did not confer a private cause of action for alleged violations of § 2512(1)).

that his conclusion—to the extent it even applies here, where plaintiffs do not allege Meta received any sensitive information—is incorrect for multiple reasons. For the federal Wiretap Act claim, Judge Pitts followed the Sixth Circuit's decision in *Luis* allowing, over a dissent, a private cause of action against "a defendant who 'allegedly violates § 2512(1)(b) by manufacturing, marketing, and selling a violative device' and who *also* 'plays an active role in the use of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications.'" *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *12 (quoting *Luis*, 833 F.3d at 637). Applying that approach, Judge Pitts allowed a § 2512 spying-device claim because the tax plaintiffs *also* alleged that the defendant engaged in conduct that violated § 2511, even though no private cause of action would lie for a violation of § 2512 alone. *Id.* As the *Yoon* court explained in rejecting this same argument asserted by one of the plaintiffs here, that interpretation "strains the language of § 2520(a) and § 2512(1) too far." *Yoon*, 549 F. Supp. 3d at 1085; *see also Luis*, 833 F.3d at 644–45 (Batchelder, J., dissenting) (arguing the majority's interpretation "confuses [the defendant's] violations of § 2512 with violations of § 2511" and "distorts the statutory text"). As discussed above, § 2520 confers a private cause of action on a person "whose wire, oral, or electronic communication *is intercepted, disclosed, or intentionally used* in violation of this chapter"—a reference to § 2511's prohibition of unlawful interceptions, not to § 2512's separate prohibitions on spying devices—to bring suit against defendants who "engaged in *that violation*." 18 U.S.C. § 2520(a) (emphases added).

Additionally, even if the *Luis* majority's interpretation were correct, it would not apply here. As shown above, plaintiffs' § 2511 claim fails for multiple independent reasons. That sets this case apart from *Luis* and from *In re Meta Pixel Tax Filing Cases* (which, again, was based on Meta's alleged receipt of *sensitive* information). Here, plaintiffs' meritless § 2511 claim based on Meta's receipt of non-sensitive, routine web-browsing information cannot open a back door to bring in a § 2512 claim for criminal manufacturing of an unlawful spying device.

For similar reasons, Meta respectfully disagrees with Judge Pitts's analysis of the CIPA claim. Judge Pitts acknowledged that CIPA § 637.2(a) confers a private cause of action only on a person "who has been injured by a violation" against "the person who committed the violation." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *10. He also acknowledged that "[i]t is difficult to see how

anyone could ever be injured by the mere manufacture of a prohibited eavesdropping device that was never used." *Id.* But he then erroneously concluded that, "[b]y including Section 635 within the provisions enforceable under Section 637.2 . . . , the California Legislature" must have "intended to permit private enforcement." *Id.* That analysis improperly assumes the conclusion—that § 635 is actually "enforceable under Section 637.2" *without* the kind of injury that § 637.2 demands. *Id.* And Meta's interpretation (the same as the *Yoon* court's) does not render § 635 "toothless," *id.*; rather, it would reserve enforcement of this criminal provision to the government. That is the usual consequence anytime a statute does not provide a private cause of action.

***The Pixel is not inherently unlawful.*** In any event, plaintiffs have not plausibly alleged that "the design of [the Pixel] renders it *primarily* useful for the purpose of the *surreptitious* interception of wire, oral, or electronic communications." 18 U.S.C. § 2512(1)(b) (emphases added); *see* Cal. Pen. Code § 635(a) ("primarily or exclusively designed or intended for eavesdropping"). Section 2512, like its state-law analogue, is "narrowly drawn" to outlaw contraband spying devices whose very existence is illegal: it reflects "a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978). It bans only "a narrow category of devices" that are unlawful *in toto*, such as "martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens, without prohibiting possession of a legitimate electronic device merely because it is small or may be used for wiretapping or eavesdropping." *Id.*

The Pixel does not fit that description. The Pixel is Meta's version of a commonplace internet analytics tool offered by many companies (not just Meta) and "widely deployed across many industries." Compl. ¶ 46. This ubiquitous technology is used on countless websites and is perfectly lawful when used properly. *Cf. Smith*, 745 F. App'x at 8–9 (affirming dismissal of other claims regarding similar technology that tracked users' web browsing). Web pixels serve a widespread, useful, and crucial role in online advertising and other functions. *See supra* 2. This is therefore not a case where it "is difficult to imagine any purpose for [the technology] other than the unauthorized interception" of communications. *United States v. Lande*, 968 F.2d 907, 910 (9th Cir. 1992); *see also Directv Inc. v.*

*Little*, 2004 WL 1811153, at *8 (N.D. Cal. Aug. 12, 2004) (denying plaintiff's summary judgment motion where "companies engaged in legitimate business" used challenged technology). Calling the Pixel "primarily useful" for unlawful spying is like calling a car "primarily useful" for getaways from bank heists.

Meta thus respectfully disagrees with Judge Pitts's decision allowing these claims to survive dismissal in the tax case. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *11. Judge Pitts stated that "the question is not whether the Court can imagine any purpose for the Pixel other than eavesdropping." *Id.* But as other courts have recognized, because these claims focus on the *nature* of a device—not *how it is used in a particular case*—it is in fact dispositive that a device is made for "regular use in varied nonsurreptitious activities," *Schweihs*, 569 F.2d at 968, or that "companies engaged in legitimate business" use it, *Little*, 2004 WL 1811153, at *8. Judge Pitts did not grapple with these cases. Nor does the Court have to "imagine" the hypothetical possibility of lawful pixel uses, *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *11, because plaintiffs' own allegations concede "[t]he pixel is widely deployed across many industries." Compl. ¶ 46. In any event, it would be particularly odd to apply the reasoning in *In re Meta Pixel Tax Filing Cases* here, where plaintiffs allege only that Meta received non-sensitive, routine web-browsing data.

***Scienter.*** Even if plaintiffs had plausibly alleged the Pixel is designed in such a way that makes it primarily useful for surreptitious wiretapping or eavesdropping, they do not plausibly allege Meta *knew* or *intended* that result. "The crime lies in intentionally manufacturing the device, *knowing that it could be primarily used for wiretapping*." *United States v. Christensen*, 828 F.3d 763, 792 (9th Cir. 2015) (emphasis added); *see* 18 U.S.C. § 2512(1)(b); Cal. Pen. Code § 635(a). Plaintiffs allege no facts plausibly showing any such knowledge or intent; to the contrary, Meta discloses in its own user-facing policies that third parties send it data through the Pixel, and again, plaintiffs acknowledge that "[t]he pixel is widely deployed across many industries." Compl. ¶ 46. Moreover, as plaintiffs allege, Meta's policies expressly *forbid* third-party developers from sending any "sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)," and require developers "to have any necessary rights and permissions" to share information with Meta. *Id.* ¶ 84 (quotation marks and emphasis omitted). Plaintiffs' allegations that some third

parties misused Meta's Pixel, even if they had any merit, would not show that Meta knew or intended that this widespread tool would be "primarily used" for unlawful activities. *Christensen*, 828 F.3d at 792.

Judge Pitts concluded scienter was "a question of fact that would require evidence of the specific disclosures Meta made throughout the class period." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *11. But again, unlike the tax case, this case does not involve Meta's receipt of any sensitive, protected data. Additionally, Meta has submitted the policies in place over the full time period relevant to plaintiffs' claims, and those policies clearly disclose that third parties can use the Pixel to send information to Meta. *See supra* 3–4. And in any event, it is plaintiffs' burden to allege facts plausibly demonstrating this scienter. *See Iqbal*, 556 U.S. at 678–79. There are no such facts alleged in the complaint.

### D. Plaintiffs Fail To State A Negligence Claim (Count VI).

Finally, plaintiffs assert a claim against Meta for negligence. Compl. ¶¶ 162–75. To bring a negligence claim, plaintiffs must plausibly allege duty, breach, causation, and harm. *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 143 (2018). The complaint fails at every step. Judge Orrick dismissed the plaintiffs' negligence claim in the healthcare case, and the claim here should likewise be dismissed. *See Doe*, 2023 WL 5837443, at *13–14.[8]

***Duty.*** Plaintiffs do not plausibly allege that Meta owed them a duty of care to avoid receipt of their web-browsing data. They merely assert "Meta owed a duty to Plaintiffs and Class members to exercise reasonable care in protecting their confidential information from unauthorized disclosure to Meta." Compl. ¶ 164. But the data at issue here is not "confidential." *See supra* 7–9. And, regardless, just like a cell phone manufacturer does not owe a general duty to anyone injured by a distracted driver (even if the manufacturer "had available the technology to disable use of the phone while the user is driving"), Meta does not owe a duty to prevent misuse of its Pixel tool (as plaintiffs allege happened

[8] Plaintiffs style this claim as for "Negligence / Negligence Per Se." But "negligence per se is a doctrine, not an independent cause of action." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). It does not confer a "private right of action for violation of a statute." *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 556 (2009). Plaintiffs must independently allege "an underlying negligence action." *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1177 (1998).

here). *Modisette*, 30 Cal. App. 5th at 151–52.

That conclusion flows directly from California law holding there is "no duty to control the conduct of another." *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 (1976). When a defendant's actions do not "*directly* put the plaintiffs in danger" and instead merely make those injuries "possible" by "creat[ing] a product" for third parties to use, the defendant is not responsible for third parties' actions. *Modisette*, 30 Cal. App. 5th at 146 (emphasis added). As plaintiffs acknowledge, *third-party developers*—not Meta—decide whether, where, and how to configure the Pixel, including which information they want to send. Compl. ¶¶ 24, 28–29. If, as plaintiffs claim, those third parties did so in a way that disclosed protected information to Meta, then plaintiffs' quarrel would be with the developer for misuse of a common tool, not with Meta for providing that tool. *Cf. In re Firearm Cases*, 126 Cal. App. 4th 959, 973 n.12 (2005) (no "duty to initiate an affirmative program of investigation and sanctioning of wayward retailers"). That is especially so given that "[t]he pixel is widely deployed across many industries." Compl. ¶ 46. It would make little sense to impose a duty on *Meta* to control the conduct of countless and varied *third parties*. That would effectively require Meta not only to constantly police the way third parties configure their own websites, but also to become an expert on the legal and regulatory restrictions applicable in every industry—rather than placing the duty of compliance on the parties who are actually *in* those industries. Those "potentially sweeping implications of finding a duty" weigh strongly against doing so. *Modisette*, 30 Cal. App. 5th at 152.

In allowing the plaintiffs in the tax case to bring a negligence claim (based on *sensitive* data), Judge Pitts relied on the "statutory presumption of duty in California." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *17 (quotation marks omitted). But as *Modisette* shows, that general presumption does not justify recognition of a duty that makes a party responsible for *third parties'* alleged misuse of a lawful tool. *See* 30 Cal. App. 5th at 146, 151–52. Judge Pitts also concluded that considerations of "foreseeability and [] related concepts" and "public policy concerns" justified imposing a duty here. *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *17 (quotation marks omitted). Again, Meta respectfully disagrees. On foreseeability, Judge Pitts's finding of a "sufficiently close connection between [Meta's] conduct . . . and the injuries that could result," *id.* at *18, fails to appreciate third-party websites' control over their own use of pixel technology. And on public policy,

Judge Pitts's conclusion that Meta was better positioned than *plaintiffs* to avoid the alleged harm ignores that *third parties* are in the best position to control what information they choose to send—and that shifting this burden to Meta imposes an "outsize burden," *id.* at *19, for Meta to become an expert on and police third parties in countless industries subject to their own regulatory regimes and data-privacy laws. Moreover, all of Judge Pitts's conclusions were reached in the context of considering allegations that Meta received *sensitive*, *protected* tax-filing information; those considerations are absent here.

***Breach.*** Plaintiffs assert Meta owed them a duty "to exercise reasonable care in protecting their *confidential information* from unauthorized disclosure to Meta." Compl. ¶ 164 (emphasis added); *see also id.* ¶¶ 165–71 (discussing "confidential information" and "protected information"). As discussed above, however, plaintiffs' web-browsing activity on the news and home-improvement websites at issue is not "confidential information." *See supra* 7–9. So even if plaintiffs could establish a duty for Meta to prevent third parties from sending *confidential* information, they have not plausibly alleged any breach of that duty in this case. That distinguishes this case from *In re Meta Pixel Tax Filing Cases*, where the alleged duty and breach were predicated on Meta's receipt of "confidential" and "sensitive" tax-filing information. 2024 WL 1251350, at *20.

***Causation.*** Plaintiffs also have not plausibly alleged Meta *proximately caused* any harm they suffered through third parties' use of the Pixel. A party does not proximately cause an injury when it "did nothing more than create the condition that made Plaintiffs' injuries possible." *Modisette*, 30 Cal. App. 5th at 154. Here, Meta's actions in making its tool freely available to the public amount to nothing more than that (again, assuming there was anything unlawful about the way in which the websites here used the Pixel). Third-party web developers—not Meta—are responsible for their configuration, and any misuse, of the Pixel tool on their own websites. Any harm to plaintiffs was caused by the websites they visited, not by Meta. And while Judge Pitts concluded proximate cause was "a question of fact for the jury," *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *20, California courts decide proximate cause as a question of law where the "connection" between a defendant's conduct and a plaintiff's injury is too "tenuous"—including where the defendant merely provided a product that a third party allegedly misused. *Modisette*, 30 Cal. App. 5th at 152.

***Harm.*** This claim also fails because plaintiffs have failed to allege any cognizable harm. Courts routinely dismiss negligence claims where plaintiffs allege only losses related to the "disclosure" of their "personal data." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012); *see also, e.g., Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) ("the mere misappropriation of personal information does not establish compensable damages" (quotation marks omitted)); *Huynh v. Quora, Inc.*, 2020 WL 7408230, at *6 (N.D. Cal. June 1, 2020) ("lost personal information"); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *13 (N.D. Cal. Mar. 26, 2013) ("wrongful taking of [personal] information" and "invasion of [] privacy"). The injuries plaintiffs assert—"loss of privacy," "diminution in value of their protected information," and "loss of the benefit of their bargain with Meta," Compl. ¶ 172—are all rooted in the alleged disclosure of plaintiffs' personal data.

Plaintiffs' allegations of harm also fail even on their own terms. Plaintiffs do not and cannot plausibly allege any privacy injury, because—as explained above—their web-browsing data is not sensitive or confidential. *See supra* 7–9. And California courts have recently clarified that lost-value-of-data theories of harm are not viable where plaintiffs allege "only that their [data] was stolen and disseminated, and that a market for it existed," without alleging "they ever attempted or intended to participate in this market, or otherwise to derive economic value from their [data]." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (rejecting UCL claim). Indeed, a court recently dismissed a negligence claim for failure to plead cognizable harm under this theory where the plaintiff alleged a healthcare provider improperly sent sensitive information to Meta through the Pixel. *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *2–3 (N.D. Cal. Jan. 19, 2024) (citing *Moore* and rejecting "diminution in value theory of injury"). Nor can plaintiffs assert a benefit-of-the-bargain theory, because they do not allege they "pa[id] more than they would have" had they known their web-browsing data would be shared with Meta, *Moore*, 83 Cal. App. 5th at 527—they do not allege they paid *anything*, either to Meta or to the websites at issue. Plaintiffs' injuries, to the extent they exist at all, are not recoverable through a negligence claim.[9]

[9] Judge Pitts's analysis in *In re Meta Pixel Tax Filing Cases* was limited to "the economic loss rule" and was based on Meta's alleged receipt of sensitive, protected information. 2024 WL 1251350, at

## CONCLUSION

The Court should dismiss the complaint with prejudice.

---

*20–21. Even assuming that decision's analysis under the economic loss rule for sensitive data was correct, it does not establish more broadly that the sort of harms asserted here are sufficient for a negligence claim. Judge Pitts also noted that plaintiffs alleged "other injuries, including loss of time and resources." *Id.* at *21. Plaintiffs here do not allege any loss of time or resources.

DATED: June 10, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: June 10, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman