**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Phone: 925-300-4455
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MARY YOON, WILLIAM MARTIN, and KAT WALKER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.

Defendant.

Case No. 5:24-cv-02612

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| DATE: | OCT. 30, 2024 |
| TIME: | 11:00 A.M. |
| COURTROOM: | 5, 4TH FLOOR |

| | |
|---|---|
| ACTION FILED: | MARCH 27, 2024 |

HONORABLE NATHANIEL M. COUSINS

## TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Meta's Consent Arguments Fail To Support Dismissal ........ 1

1. Under *Nguyen*, *Gershzon*, And *In re Meta Pixel Tax Filing*, Meta Has Not Met Its Burden Of Proving Consent ........ 1

2. Under *In re Healthcare Litigation* And *In re Metal Pixel Tax Filing*, The Disclosures Meta Relies On Do Not Furnish Consent ........ 3

B. Plaintiffs State A Claim Under CIPA § 631(a) ........ 6

C. Plaintiffs State A Claim Under CIPA § 632 ........ 8

D. Plaintiffs State A Claim Under CIPA § 635 ........ 9

1. The Plain Text of CIPA Provides For A Cause Of Action ........ 9

2. Whether The Pixel Is Inherently Unlawful Is A Factual Dispute That Cannot Properly Be Resolved On A 12(b)(6) Motion ........ 10

3. The Allegations Meet The Low Pleading Requirements For Scienter ........ 11

III. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Financial Network, LLC*,
30 F. 4th 849 (9th Cir. 2022)........................................................................................ 2, 3

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023)................................................................ 4, 8

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)............................................................................ 8

*Feldman v. Star Tribune Media Co*., LLC,
659 F. Supp. 3d 1006 (D. Minn. Mar 7, 2023) ............................................................ 4, 5

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ..................................................................................................... 8

*Gastelum v. TJX Companies, Inc.*,
2024 WL 2124536 (N.D. Cal. Mar. 18, 2024).................................................................. 1

*Gershzon v. Meta Platforms*,
2023 WL 5420234 (N.D. Cal. Aug. 23, 2023)...................................................... 1, 2, 6, 7, 11

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ....................................................................................................... 11

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. Aug. 23, 2023)............................................................... 5

*Greenberger v. San Francisco Police Dep't*,
2001 WL 969048 (N.D. Cal. Aug. 13, 2001).................................................................. 10

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................................................................ 6, 7

*In re Flash Memory Antitrust Litig*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................................ 2

*In re Google Assistant Priv. Litig*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................................. 8

*In re Healthcare Litigation*,
2022 WL 17869218...................................................................................................... 3, 6

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d ........ 6, 7

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. March 25, 2024) ........ 1, 2, 3,6, 8, 9, 10, 11

*In re Vizio, Inc. Consumer Privacy Lit.*,
238 F. Supp. 3d 1204 (C.D. Cal. Mar. 2, 2017) ........ 4, 5

*In re Zynga Privacy* Litigation,
750 F.3d 1098 (9th Cir. 2014) ........ 6, 7

*Levy v. Irvine*,
66 P. 953 (Cal. 1901) ........ 11

*Marshal v. Motel 6 Operating LP*,
825 Fed. App'x 527 (9th Cir. 2020) ........ 10

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 2, 3

*Nguyen v. United States*,
2022 WL 822435 (N.D. Cal. Jan. 11, 2022) ........ 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 7, 9, 10

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 3, 4

*U.S. v. Alonso*,
48 F.3d 1536 (9th Cir. 1995) ........ 7

*Yershov v. Gannet Satellite Information Network, Inc.*,
204 F. Supp. 3d 353 (D. Mass. Sep. 2, 2016) ........ 4, 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 2

**Statutes**

28 U.S.C. § 1447(c) ........ 10
Cal. Penal Code § 635 ........ 9, 10

**Rules**

Fed. R. Civ. P. 9(b) ........ 11

**Other Authorities**

*S.D. v. Hytto Ltd.*,
2019 WL 833359, at *6 (N.D. Cal. May 15, 2019) ........................................................... 6

## I. INTRODUCTION

There are numerous cases currently pending in this District concerning the use of the Meta Pixel to surreptitiously collect and monetize sensitive data from website users, including cases involving DMV information, health information, and tax filing information. This case involves the disclosure of video viewing data. What this case and the other Pixel cases pending in this District all share in common is that the nature of the data at issue is protected from disclosure by statute or common law. Every other Pixel case in this District has survived the pleadings. There is no reason for this case to be the exception. Indeed, Meta did not bring any new or different arguments in its motion and instead simply repeats arguments it has unsuccessfully made before, multiple times.[1]

## II. ARGUMENT

### A. Meta's Consent Arguments Fail To Support Dismissal

Meta argues that the complaint should be dismissed in its entirety because its various policies purportedly disclose that Meta receives certain unspecified information from third-party web developers. Memo. ISO MTD, 3:2-3. That argument fails for two reasons and has been repeatedly rejected by courts adjudicating the other pixel cases now pending in this District.

#### 1. Under *Nguyen*, *Gershzon*, And *In re Meta Pixel Tax Filing*, Meta Has Not Met Its Burden Of Proving Consent

Meta bears the burden of proving consent, which is ordinarily a question of fact, and it has failed to meet that burden on a motion to dismiss. For that reason, Judges Illston and Pitts recently rejected the same argument Meta rehashes here. *See Gershzon v. Meta Platforms*, 2023 WL 5420234 at *9, 11 (N.D. Cal. Aug. 23, 2023) (Illston, J.); *In re Meta Pixel Tax Filing Cases*, -- F. Supp. 3d. -- 2024 WL 1251350 at *5 (N.D. Cal. March 25, 2024) (Pitts, J.). The same outcome as in *Gershzon* and *In re Meta Pixel Tax Filing Cases* is warranted here.

Plaintiffs allege they did not consent to Meta obtaining their video viewing information, and those allegations must be accepted as true at this juncture. FAC, ¶¶ 3, 7-9, 78-85; *see also Gastelum v. TJX Companies, Inc.*, 2024 WL 2124536, at *2 (N.D. Cal. Mar. 18, 2024) (Cousins,

[1] Plaintiffs are withdrawing their causes of action brought under the Federal Wiretap Act (Counts I and V) and the negligence (Count VI).

M.J.) ("When reviewing a 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."). As was the case in *Gershzon* and *In re Meta Pixel Tax Filing Cases*, Meta challenges those allegations by asking the Court to take judicial notice of various documents and draw inferences from those documents in Meta's favor (namely, that Plaintiffs purportedly saw and assented to those various policies, and that such policies would permit the disclosure of Plaintiffs' video viewing data). That argument has no more merit here than it did in *Gershzon* and *In re Meta Pixel Tax Filing Cases*. *See Gershzon*, 2023 WL 5420234 at *9 n.3 ("The Court will not consider documents beyond the pleadings and draw inferences from those documents in Meta's favor."); *cf. In re Flash Memory Antitrust Litig*, 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009) ("Defendants' argument relies on inferences being drawn in *their* favor which, of course, is the antithesis of the standard of review applicable to a motion to dismiss.") (emphasis in original).

Instead of asking the Court to draw inferences in Meta's favor, Meta must show that Plaintiffs took "affirmative action to demonstrate assent" to the documents Meta cites, but it has not done so. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014); *see also Berman v. Freedom Financial Network, LLC*, 30 F. 4th 849, 856-57 (9th Cir. 2022) (following *Nguyen*). Merely arguing that privacy policies or other terms existed on the Internet without offering proof of actual assent is insufficient to meet that burden. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). As Judge Pitts reasoned when rejecting the same argument Meta makes here, "Meta is correct that plaintiffs *could* have consented to having their data collected if they agreed to terms disclosing the practices. But nothing before the Court permits it to conclude at this [motion to dismiss] stage that plaintiffs in fact agreed to this collection." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 at *5 (emphasis in original). That same reasoning applies here. Typically, when a company argues that a plaintiff provided consent, whether for arbitration or any other disputed issue, the company must provide actual proof of the time and circumstances when consent was purportedly provided. Meta has been unable to provide any such proof in these pixel cases – not in *Gershzon*, not in *In re Meta Pixel Tax Filing Cases*, and not here. The best Meta can do is cite privacy policies and other documents that

supposedly existed on the Internet, with no proof that anyone (let alone Plaintiffs) actually read them or affirmatively assented to their terms. Under *Nguyen*, and as held by Judges Illston and Pitts, that is insufficient to establish consent. *See Nguyen*, 763 F.3d at 1179.

Finally, Meta leans heavily on the unpublished decision in *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018), but that decision does not support Meta's position here. *Smith* did not hold—as Meta implies—that all Facebook users are deemed to have consented to data collection as a matter of law, regardless of whether Meta can prove that website users affirmatively assented to Meta's terms. Instead, the issue of affirmative assent appeared to have been uncontested in that case. *See Smith*, 745 F. App'x at *8-9 (explaining "Plaintiffs do not dispute" they accepted Meta's Terms and Policies, and "gave general consent to [Meta's] data tracking and collection practices"). The notion that *Smith* eliminates Meta's burden of proof on consent cannot be reconciled with the Ninth Circuit's later decision in *Berman* approving the rule in *Nguyen*. *See Berman*, 30 F.4th at 857 ("the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" and to show "[u]nambiguous manifestation of assent") (internal quotation omitted).

**2. Under *In re Healthcare Litigation* And *In re Metal Pixel Tax Filing*, The Disclosures Meta Relies On Do Not Furnish Consent**

Even if Plaintiffs had provided affirmative assent to the various policy documents Meta relies on, Meta's consent defense would fail for another reasons. Plaintiffs allege that Meta's Terms of Service and other policies "never specifically indicated that Meta may acquire video viewing history" from third party websites, and instead said the opposite: that third party websites will not share "any information *defined as sensitive under applicable laws*." FAC, ¶¶ 80-82, 84(A) (emphasis in original); *see also id.* at ¶ 84(B)-(D) (describing other, similar statements).

In *Healthcare Litigation* and *In re Meta Pixel Tax Filing Cases*, Judges Orrick and Pitts correctly held, based on nearly identical allegations, that there is no basis to rule that Facebook users consented to the disclosure of sensitive information—especially given that Meta expressly said it would *not* collect that information. *See Healthcare Litigation*, 2022 WL 17869218, at *9-10 and n.3; *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 at *5 ("Meta does not contend that

its Terms of Service specifically disclosed that it would receive sensitive financial information. To the contrary, Meta asserts that it publicly stated that such information would *not* be collected."); *see also Brown v. Google LLC*, 2023 WL 5029899 at *9 (N.D. Cal. Aug. 7, 2023) ("*Brown II*") (Google could not establish consent to its data collection practices based on a "general disclosure" that was inconsistent with Google's other statements about the privacy features of its Incognito mode).

Here, Meta contends that courts have distinguished *Smith* when Meta obtains sensitive information, but it disputes that the video viewing data at issue here qualifies as sensitive. *See* Memo. ISO MTD, 6:10-15;8:4-12. Meta is mistaken.

Without a doubt, videos that a person views in the privacy of their own home, on their own device, on their own private Internet network, are the very type of content that has been "defined as sensitive" under both federal and state statutory laws, and the common law. FAC ¶¶ 2, 84(A). Meta argues that statutes that protect such sensitive information, like the VPPA and similar state laws, are inapplicable because Plaintiffs do not assert claims under those statutes. *See* Memo. ISO MTD, 8:16-18. Relatedly, Meta argues that the subject matter of the videos—videos about dolphins or gardening—makes the content not sensitive by definition. *See id*. at 7-8. But the relevant inquiry is not whether Plaintiffs have established every element of a VPPA or similar state claim, but rather whether the private video viewing data at issue here is the type of information that is protected or considered "sensitive" under these laws.

Snooping on a person's private video viewing history, much like snooping on their mail or private reading material, has a long history of protection under the common laws of this country, as well as a multitude of state and federal statutes put in place to protect private residents from such conduct. *See gen. In re Vizio, Inc. Consumer Privacy Lit*., 238 F. Supp. 3d 1204, 1215-16 (C.D. Cal. Mar. 2, 2017) (discussing the background for the VPPA, Congress's judgment of the harm inflicted when video viewing information is intercepted, and analogous common law torts); *Feldman v. Star Tribune Media Co*., LLC, 659 F. Supp. 3d 1006, 1014-15 (D. Minn. Mar 7, 2023) (same); *Yershov v. Gannet Satellite Information Network, Inc*., 204 F. Supp. 3d 353, 361-62 (D.

Mass. Sep. 2, 2016) (same) (*reversed on other grounds in Yershov v. Gannet Satellite Information Network, Inc*., (First Cir. Apr. 29, 2016)).

The subject matter of the video material being intercepted is not a factor; rather, the protections are content-neutral. *See, e.g., Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. Aug. 23, 2023) (holding that the VPPA "looks to a video's format, rather than its subject matter or the provider's identity"). The "sensitivity" of the information stems from the fact of disclosure of personal viewing habits, and not based on the *content* of those viewing habits. *See, e.g., Feldman*, 659 F. Supp. 3d at 1011-12 (general videos viewed on startribune.com website fall within VPPA); *In re Vizio, Inc*., 238 F. Supp. 3d at 1211-12 (movies on the Internet and on-demand services such as Netflix, Hulu, and Pandora are covered under VPPA); *Yershov*, 204 F. Supp. 3d at 354 (general videos on USA Today covering a range of topics like news, sports, and entertainment covered within VPPA).

Meta latches on to an exemplar video in the FAC meant to show how Meta's pixel works to portray this case as one about watching some harmless videos about gardening, dolphins, or Olympic swimmer Michael Phelps. *See* Memo. ISO MTD, 5:7-14, 7:19-24. As discussed above, the *content* of the video is immaterial to the fact that private viewing information is inherently sensitive. The websites at issue are general, including news coverage, home topics, and personal interests. It takes no stretch of the imagination to see how seemingly benign viewing information can be "sensitive." For instance, a person that repeatedly watches videos covering LGBTQ issues on the news may fear that exposure of such viewing habits would expose their personal sexual preferences. A person fixated on news covering the Middle East may be concerned that the release of that history would expose their political or religious affiliations. A person fixated on a particular controversial celebrity or athlete—*e.g*., O.J. Simpson or Kanye West—may be concerned that the release of that history would expose them to ridicule or shame. A person fixated on an attractive, scantily-clad celebrity may be concerned about the disclosure of that information to a third party given their marital or relationship status. Videos viewed in the privacy of the home, on a personal device, on a personal network, are inherently sensitive. Unless a person has given express

affirmative consent, a third party would typically need a warrant or subpoena to obtain such information.

**B. Plaintiffs State A Claim Under CIPA § 631(a)**

Apart from consent, the only other argument Meta makes concerning the cause of action under § 631(a) is that Plaintiffs purportedly failed to allege that Meta received the "contents" of any communications. Memo. ISO MTD, 13:19-23; *see also id.* 12:16-13:11. Here again, Meta is rehashing an argument it has consistently made in recent pixel cases, and that courts have consistently rejected. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *6 (rejecting Meta's arguments that website activity is not the "contents" of a communication within the meaning of wiretapping laws); *Healthcare Litigation*, 2022 WL 17869218, at *11 (same); *Gershzon*, 2023 WL 5420234 at *12-13 (same). Meta does not cite a single decision adopting its argument, and Plaintiffs are aware of none.

The term "content" includes "any information concerning the substance, purport, or meaning of [a] communication … 'Contents' refers to the 'intended message conveyed by the communication'—it does not include record information regarding the characteristics of the message that is [automatically] generated in the course of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 12 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Time and again, courts have held that the term includes information exchanged on the Internet, such as in form field information and "descriptive URLs" that provide "'information regarding the user's browsing history' and [that] divulge 'a user's personal interests, queries, and habits on a third party website operating outside of Facebook's platform.'" *Gershzon*, 2023 WL 5420234, at *12 (quoting *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 605 (9th Cir. 2020)); *accord Healthcare Litigation*, 2022 WL 17869218, at *11 (addressing "contents" requirement). So-called "record" information, on the other hand, "is typically data generated automatically at the sending of the message and is incidental to the use of the communication device." *S.D. v. Hytto Ltd.*, 2019 WL 833359, at *6 (N.D. Cal. May 15, 2019). "Examples of record information include the origin of a phone call, a phone call's length, and geolocation data from an app." *Id.* (collecting authorities).

Here, Plaintiffs properly allege that their video viewing history is "content" within the meaning of the statute. FAC, ¶ 119 (alleging the communications at issue here included the "contents" of electronic communications, including "detailed URL request[s]" and "the title of videos that the subscribers asked the subject websites to deliver"); *see also id.* at ¶ 137. When each Plaintiff visited a website, they affirmatively asked to view videos that interested them, and each website responded by providing the requested video. That exchange was a communication whereby the plaintiff intended to convey a message about which video he or she wanted to watch, and that same information was surreptitiously shared with Meta. *Cf. Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses—whether online or over the phone—is [a] communication."). As in *In re Facebook*, the video viewing information divulges "a user's personal interests, queries, and habits on a third party website operating outside of Facebook's platform." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 605.

Meta cites *In re Zynga Privacy* Litigation, 750 F.3d 1098, 1106 (9th Cir. 2014) for the proposition that URLs disclosing which website a user visited do not qualify as the "contents" of a communication. Memo ISO MTD, 12:24-13:11. But Meta fails to disclose to the Court that the Ninth Circuit rejected that same argument by Meta in *re Facebook Inc. Internet Tracking Litigation*, explaining that "[u]nlike the URLs in *Zynga*, which revealed only that a Facebook user had clicked on a link to a gaming website, Plaintiffs allege that the URLs in the instant case could emanate from search terms inputted into a third-party search engine. These terms and the resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." 956 F.3d at 605; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795-96 (distinguishing *Zynga* and rejecting the same argument Meta makes here); *Gershzon*, 2023 WL 5420234 at *12-13 (same).[2]

---

[2] In the fact section of its brief, Meta briefly notes that Plaintiffs never allege the specific content of what they watched, though Meta waived that argument by failing to say anything about it in the Argument section of its brief. *See U.S. v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995). In any event, wiretapping claims are governed by Rule 8, not Rule 9(b), and so a plaintiff alleging privacy

### C. Plaintiffs State A Claim Under CIPA § 632

In addition to consent, Meta argues that the cause of action under § 632 fails because Meta believes that there is "a presumption" that Internet communications are not confidential, and Meta disagrees that video viewing history is confidential. That argument fails for two reasons.

First, Meta's interpretation lacks legal support. Last year in *Brown*, Judge Gonzalez Rogers held that Meta's "argument that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination." *Brown v. Google LLC*, 2023 WL 5029899, at *17 (N.D. Cal. Aug. 7, 2023). As the *Brown* court explained, under the California Supreme Court authority, "confidentiality, under Section 632, requires 'nothing more than the existence of a reasonable expectation by one of the parties that no one is listening in or overhearing the conversation.'" *Id.* (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 773 (2002)). "California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Id.* at *18. Such a presumption would be inconsistent with the principle "that CIPA was intended to cover newer forms of communication," like the Internet. *Id.* at *17.

Thus, for example, Judge Orrick held in the pending *Healthcare* proceedings against Meta that § 632 may apply to health-related information shared over the Internet, because "plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential." *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 799. For similar reasons, Judge Gonzalez Rogers held in *Brown* that communications made under Google's private privacy modes may fall within the ambit of § 632.

---

violations or wiretapping is not required to disclose in the pleadings the specific communications that were recorded or surveilled. *See*, *e.g.*, *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 at *6 ("Plaintiffs do not need to plead the specific and presumably highlight sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred."); *In re Google Assistant Priv. Litig*, 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) ("[T]he Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that …were wrongly recorded."); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("there is no requirement that [the plaintiff] specifically allege the exact contents of her communications").

Here, Plaintiffs allege they had an objectively reasonable expectation that their video viewing information would be treated as confidential, because it is a category of information that is protected from disclosure. FAC, ¶ 146. To be sure, Meta disagrees with that proposition, but Meta's position is already rebutted in Section II.A.2 above.

### D. Plaintiffs State A Claim Under CIPA § 635

#### 1. The Plain Text of CIPA Provides For A Cause Of Action

Judges Chhabria and Pitts both rejected the same arguments for dismissal of § 635 claims that Meta makes here, and this Court should too. *See Revitch*, 2019 WL 5485330, at *1; *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 at *10-11. First, Meta argues there is no cause of action under the statute, but that is incorrect. Section 635 imposes liability on "[e]very person who … possesses … or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635 (emphasis added). In turn, § 637.2(b) permits any person to "bring an action to enjoin and restrain *any violation of this chapter* …." *Id.* at § 637.2(b) (emphasis added). Hence, the statute expressly permits a cause of action under § 635.

In response, Meta contends that there is no cause of action because Plaintiffs have not been injured. *See* Memo ISO MTD, at 15:17-23; 17:4-5. As a preliminary matter, Plaintiffs allege they were injured as a result of Meta furnishing its surveillance technology, which allowed the wiretapping to occur. FAC, ¶ 154. That is a sufficient injury for purposes of § 635. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 at *10 ("The better interpretation is that injuries caused by use of an eavesdropping device are traceable to the manufacture, sale, and provision of that device, and that an injured party therefore has a private right of action against the creator of the device.").

Finally, even if Meta's position were correct (it is not), Meta's argument goes to this Court's jurisdiction, because if Plaintiffs lack an injury as Meta contends, then Article III standing is absent, and so too is jurisdiction in this Court with respect to the claim under § 635. *Nguyen v. United States*, 2022 WL 822435, at *1 (N.D. Cal. Jan. 11, 2022) ("Plaintiff fails to establish standing because she does not allege a cognizable injury or redressability.") (Cousins, M.J.).

Where, as here, a matter is removed from state court, the absence of subject matter jurisdiction requires remand. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). In that circumstance, dismissal with prejudice, as Meta seeks here, is reversible error. *See Marshal v. Motel 6 Operating LP*, 825 Fed. App'x 527, 528 (9th Cir. 2020) (vacating dismissal and instructing district court to remand the case back to state court); *Greenberger v. San Francisco Police Dep't*, 2001 WL 969048, at *2 (N.D. Cal. Aug. 13, 2001) ("Where plaintiffs in a removed action lack federal standing to sue, the action must be remanded, not dismissed"). So, if the Court agrees with Meta and disagrees with Judges Chhabria's and Pitts' decisions in *Revitch* and *In re Meta Pixel Tax Filing Cases*, then it should remand the cause of action under § 635 for parallel proceedings in state court.

### 2. Whether The Pixel Is Inherently Unlawful Is A Factual Dispute That Cannot Properly Be Resolved On A 12(b)(6) Motion

*In in re Meta Pixel Tax Filing*, Meta made the same argument it makes here, with Judge Pitts rejecting it as follows:

> Meta also argues that the Pixel is not "primarily or exclusively designed or intended for eavesdropping." But Plaintiffs allege that the Pixel *is* "primarily or exclusively designed" for eavesdropping. Compl. ¶ 157. They also allege that the Pixel is "invisible" and that it transmits internet users' communications in real time directly to Meta. Compl. ¶¶ 27–29. Drawing all reasonable inferences in plaintiffs' favor, as required, these nonconclusory allegations are sufficient to plead that the Pixel is primarily designed for eavesdropping.

*In in re Meta Pixel Tax Filing*, 2024 WL 1251350 at *11. Judge Chhabria applied similar reasoning when he rejected the same argument in *Revitch*, explaining "the Court must assume the truth of [plaintiff's] allegation that [defendant's] code is a 'device ... primarily or exclusively designed or intended for eavesdropping upon the communication of another.'" *Revitch*, 2019 WL 5485330 at *3. Here, as in *In in re Meta Pixel Tax Filing*, Plaintiffs allege that the Pixel is primarily used for eavesdropping. FAC, ¶¶ 151-52; *see also id.* at ¶¶ 12-21 (alleging that Meta's business model relies on surveillance and data collection).

Against these allegations, the best that Meta can do is argue that web pixels are "ubiquitous," "widespread," and "useful." But for Meta to argue, in essence, that "everyone else does it" is (1) an argument outside the pleadings; and (2) does not establish as a matter of law that that the pixel is benign, contrary to the allegations in the complaint.

**3. The Allegations Meet The Low Pleading Requirements For Scienter**

Meta seeks dismissal for failure to sufficiently allege scienter. Once again, Meta is cutting and pasting arguments that failed in the other pending Pixel cases, while offering nothing new here. *See Gershzon*, 2023 WL 5420234 at *11; *In in re Meta Pixel Tax Filing*, 2024 WL 1251350 at *11.

Intent and knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs allege that Meta's entire business model is based on surveillance and "***gunning hard to get lots and lots of third-party data about its users into its database***." FAC ¶ 15 (bold in original); *see also id.* at ¶¶ 12-21. Plaintiffs then allege how Meta technology is designed to further Meta's business model by collecting that data. *Id.* at ¶¶ 23-49. After setting that background, Plaintiffs allege that Meta's collection of video information was intentional and consistent with its business model; explaining, for example, that "video viewing history is valuable for advertising purposes." *Id.* at ¶¶ 50-77, 87. These allegations far exceed the "short," "plain," and "general" allegations required by Rules 8 and 9(b).

Plaintiffs also allege in the alternative that Meta was willfully blind to the fact that it was receiving and using the video viewing information, because it had a financial incentive to turn a blind eye to the problem. Compl., ¶¶ 93-94. Willful blindness is equivalent to actual knowledge. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (defendants who "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances . . . are just as culpable as those who have actual knowledge"); *Levy v. Irvine*, 66 P. 953, 956 (Cal. 1901) (defendant could not "willfully shut his eyes to the means of information which he knows is at hand, and if he does so his willing ignorance is to be regarded as equivalent to actual knowledge"). As permitted by Rule 9(b), the Complaint includes general allegations concerning Meta's willful blindness (Compl., ¶¶ 78-79), which are bolstered by the detailed

allegations described above about Meta's business model and technology. *See generally* Compl., ¶¶ 12-77.

## III. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss should be denied. If the Court determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend to cure any such deficiencies.

Dated: July 8, 2024

Respectfully submitted,

Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Phone: 925-300-4455
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiffs*