GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KRISTINE A. FORDERER, SBN 278745
kforderer@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

MAXIMILIAN SLADEK DE LA CAL, SBN 324961
msladekdelacal@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Telephone: (310) 883-6400
Facsimile: (310) 883-6500

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MARY YOON, ET AL.,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 5:24-cv-02612-NC

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Date: October 30, 2024
Time: 11:00 a.m.
Courtroom 5, 4th Floor

Action Filed: March 27, 2024
Honorable Nathanael M. Cousins

## TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of The Web-Browsing Data Alleged In Their Complaint. ........ 2

A. Plaintiffs Agreed To Meta's Terms By Creating A Facebook Account And Using Meta's Services. ........ 2

B. Meta's Terms Establish Consent To Receive Plaintiffs' Web-Browsing Data. ........ 4

II. Each Of Plaintiffs' Claims Also Fails For Numerous Other Reasons. ........ 6

A. Plaintiffs Fail To State A Claim Under CIPA § 631 ........ 6

B. Plaintiffs Fail To State A Claim Under CIPA § 632 ........ 8

C. Plaintiffs Fail To State A Claim Under CIPA § 635 ........ 9

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 8

*Carroll v. Chick-fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 4

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 8

*Davis v. Meta Platforms, Inc.*,
2023 WL 4670491 (E.D. Tex. July 20, 2023) .......... 3

*Directv Inc. v. Little*,
2004 WL 1811153 (N.D. Cal. Aug. 12, 2004) .......... 10

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 8, 9

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 7

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 8

*Homsy v. Bank of Am., N.A.*,
2013 WL 2422781 (N.D. Cal. June 3, 2013) .......... 6

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 6, 8

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 10

*Lloyd v. Facebook, Inc.*,
2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) .......... 2

## TABLE OF AUTHORITIES


Page(s)

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 1, 2, 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 5, 6, 9

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .......... 3, 5, 6

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) .......... 2

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) .......... 7

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 7, 8, 10

*Rickwalder v. Meta Platforms, Inc.*,
2022 WL 22462351 (Cal. Super. Ct. Sept. 15, 2022) .......... 4

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 8

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 9, 10

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 1, 2, 5

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 8

*United States v. Lande*,
968 F.2d 907 (9th Cir. 1992) .......... 11

*United States v. Schweihs*,
569 F.2d 965 (5th Cir. 1978) .......... 11

*Wise Guys I v. Meta Platforms, Inc.*,
2023 WL 8434452 (N.D. Tex. Dec. 4, 2023) .......... 2

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 9, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs here are asserting privacy claims based on plain-vanilla web-browsing data on news and home-improvement websites, like USAToday.com and HGTV.com, that show anodyne video clips of things like swimming dolphins and gardening. Claims like that fail as a matter of law: The Ninth Circuit has squarely held—and recently reiterated—that Facebook users cannot state a claim against Meta for "collecting and using their browsing data" because Meta's policies clearly disclose that it "maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018); *see also Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). The complaint should therefore be dismissed in its entirety.

In an attempt to get around that obstacle, plaintiffs pitch this as a sensitive-data case in the vein of *In re Meta Pixel Tax Filing Cases*, No. 22-cv-7557 (N.D. Cal.), and *In re Meta Pixel Healthcare Litigation*, No. 22-cv-3580 (N.D. Cal.), where courts made an exception to the *Smith* rule for data reflecting personal tax and health information. But that exception does not apply here, where the data is neither inherently sensitive nor statutorily protected: web browsing on general news and home-improvement sites with videos about dolphins, gardening, and the like is not inherently sensitive, and plaintiffs here abandon any attempt to show that the statutes they cite (the Video Privacy Protection Act and similar state laws) actually cover the data their complaint alleges. Plaintiffs' novel theory that this kind of web-browsing data is actionable would open the courthouse door to a tsunami of litigation against web developers and technology providers anytime a webpage happens to include a video clip. That radical proposition is not the law, and this Court should reject it.

In addition to that overarching problem, plaintiffs also fail to plead essential elements of their remaining claims. In their opposition brief, plaintiffs expressly abandon three of the six claims they asserted against Meta. And the remaining three—all under the California Invasion of Privacy Act—fare no better. These failures supply independent, alternative bases for dismissal.

Because plaintiffs have not stated and cannot state any viable claim against Meta based on its receipt of basic web-browsing data, this Court should dismiss the complaint with prejudice.

## ARGUMENT

### I. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of The Web-Browsing Data Alleged In Their Complaint.

The Ninth Circuit has squarely held that Facebook users' agreement to Meta's policies, which explicitly disclose Meta's receipt of data from third-party websites that use the Meta Pixel, establishes their consent to Meta's receipt of their web-browsing data as a matter of law. *Smith*, 745 F. App'x at 8–9. Indeed, the Ninth Circuit reiterated that position just this month and affirmed dismissal of a claim that Meta "track[ed] [the plaintiff's] online activity" because "Facebook's data policy gives clear notice that third party partners may share data with Facebook." *Lloyd*, 2024 WL 3325389, at *2. As Meta's motion explained, plaintiffs' consent bars all of their remaining claims. *See* Mot. 6–9.

Plaintiffs do not and cannot dispute those basic premises. Instead, they offer two responses: first, they suggest that perhaps they never agreed to Meta's policies when they signed up for their Facebook accounts after all; and second, they argue that web-browsing data on pages with video clips is so "sensitive" that it is outside the scope of consent. Neither argument withstands examination.

#### A. Plaintiffs Agreed To Meta's Terms By Creating A Facebook Account And Using Meta's Services.

Tellingly, plaintiffs' leading argument is a procedural dodge: they say that at this stage of the case, there is not yet "proof" that they "took affirmative action to demonstrate assent" to Meta's policies. Opp. 2 (quotation marks omitted). But plaintiffs affirmatively allege in their complaint that they are Facebook users. Compl. ¶¶ 7–9. Their own allegations thus establish their assent to Meta's policies because, as other courts have acknowledged, "Meta's relationship with the users . . . is governed by its Terms of Service (formerly known as Statement of Rights and Responsibilities), to which all users must agree to create a Facebook account." *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023), *aff'd in relevant part*, 2024 WL 3325389 (9th Cir. July 8, 2024); *see also, e.g.*, *Wise Guys I v. Meta Platforms, Inc.*, 2023 WL 8434452, at *1–3 (N.D. Tex. Dec. 4, 2023) (transferring case to Northern District of California because "[a]ll Facebook users who register must agree to the Terms of Service, which includes [a] forum-selection clause"); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023) ("All Facebook users must agree to its Terms of Service

(‘TOS’) and other rules that govern access to, and use of Facebook.”); *Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *1–2 (E.D. Tex. July 20, 2023) (“Every one of the billions of people who use Meta’s applications—including Facebook and Instagram—must acknowledge and agree to Meta’s terms of service at the time of registration. . . . Like all Facebook users, Davis agreed to Facebook’s terms of service when he created his account.”). Plaintiffs’ complaint nowhere alleges that they created Facebook accounts *without* agreeing to Meta’s policies. And plaintiffs’ suggestion in their brief that they (unlike every other Facebook user) somehow managed to create Facebook accounts without agreeing to Meta’s policies is utterly implausible. Although plaintiffs are entitled to “reasonable inference[s]” in their favor at the motion-to-dismiss stage, the Court is not obliged to check “its judicial experience and common sense” at the door. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). At a minimum, the complaint pleads no facts to support the fanciful conclusion that plaintiffs became Facebook users without agreeing to Meta’s terms, and the Court accordingly should not credit that conclusion.

Meta acknowledges that some courts have deemed this issue “a question of fact” at the motion-to-dismiss stage. *See, e.g., In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *7 (N.D. Cal. Mar. 25, 2024). Meta respectfully disagrees with those decisions, because the notion that plaintiffs created Facebook accounts (as they affirmatively allege) without assenting to Meta’s policies is not plausible. But even if this Court is inclined to treat plaintiffs’ agreement to Meta’s policies as a question of fact, that simply kicks the can a few feet down the road. Discovery will swiftly reveal that plaintiffs, like all other Facebook users, agreed to Meta’s policies when they created a Facebook account. This Court could then conduct a hearing to confirm that plaintiffs did, in fact, agree to those policies. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164–67 (N.D. Cal. 2016) (finding, after evidentiary hearing, that “plaintiffs assented to the user agreement when they signed up for Facebook” and “agreed to the current user agreement” through continued use). If plaintiffs insist on conducting that exercise and this Court agrees it is necessary, then Meta respectfully requests that the Court order targeted discovery on the issue of assent to Meta’s policies and schedule an evidentiary hearing, because this issue is dispositive of the entire action.

### B. Meta's Terms Establish Consent To Receive Plaintiffs' Web-Browsing Data.

Plaintiffs next argue that this case is unlike *Smith*, and the data here is outside the scope of consent, because their web-browsing data is "sensitive." Opp. 3–6. In making that argument, plaintiffs attempt to shoehorn the web-browsing data at issue in this case into the bucket of purportedly "sensitive" data cases like *In re Meta Pixel Healthcare Litigation* and *In re Meta Pixel Tax Filing Cases*. That rings hollow: the web-browsing data at issue here is not protected by statute (as plaintiffs do not contest), and it is significantly *less* sensitive than even the health-related web-browsing data that the Ninth Circuit deemed within the scope of consent in *Smith*.

Plaintiffs' central thesis is that Meta's policies do not establish consent to receive "information defined as sensitive under applicable laws," and that web-browsing data that pertains to video-viewing is sensitive under "the VPPA and similar state laws." Opp. 3–4 (quotation marks and emphasis omitted). But for that theory to work, plaintiffs would at least have to show that the data at issue *is actually protected* under "the VPPA and similar state laws." *Id.*; *see Rickwalder v. Meta Platforms, Inc.*, 2022 WL 22462351, at *15 (Cal. Super. Ct. Sept. 15, 2022) (dismissing wiretapping claims except insofar as they were based on data sent from HBO "in violation of the VPPA"). They do not. In fact, plaintiffs do not contest that they cannot "establish[] every element of a VPPA or similar state claim." Opp. 4. And they do not respond to Meta's arguments that the data at issue here is not protected under the VPPA or similar state statutes. *See* Mot. 8–9.

Instead, plaintiffs argue that they need not satisfy the requirements of those statutes because (they say) the "relevant inquiry" is whether the data here "is the type of information that is protected or considered 'sensitive' under these laws." Opp. 4. That dodge fails: to show that the data here actually is "protected or considered 'sensitive' under these laws," *id.*, plaintiffs necessarily must show that the VPPA or similar state statutes actually apply. Yet none of those statutes protects or deems sensitive *all* data pertaining to video-viewing, and in particular none of them covers the sort of data at issue in this case—"publicly available, free videos on a website." *Carroll v. Chick-fil-A, Inc.*, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024); *see* Mot. 8–9. Plaintiffs cannot assert that their data is statutorily protected while disclaiming the need to show that the statutes cover the data at issue here.

Plaintiffs also argue that the videos they watched are "inherently sensitive," Opp. 5, but that

overbroad assertion is implausible and lacks legal support. The videos plaintiffs identify in their complaint appear on publicly available news and home-improvement websites and concern anodyne topics like dolphins and gardening. *E.g.*, Compl. ¶¶ 60, 71. As *Smith* confirms, public web-browsing data—even web-browsing data pertaining to *more* sensitive topics than the data at issue here, like health information—falls squarely within Meta's disclosures and thus squarely within the scope of consent. 745 F. App'x at 8–9. And as Meta explained, that sets this case apart from litigation involving data allegedly protected by HIPAA or tax laws. Indeed, the court in the healthcare case emphasized that the information at issue there was "readily distinguishable from online communications in general." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022); *see also* Mot. 6–9. But here "online communications in general" are all plaintiffs have alleged. Meta's receipt of data reflecting plaintiffs' "general internet browsing" on news and home-improvement websites is precisely "the data collection that plaintiffs agreed to." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794. Plaintiffs cite no authority to undermine that commonsense conclusion; the cases they cite (at 4–5) involve claims under the VPPA, but again, that gets plaintiffs nowhere because they fail to show that the data at issue here is protected under the VPPA.

Similarly, plaintiffs' analogy to "snooping on [a person's] mail or private reading material," Opp. 4, breaks down because Facebook users have *already agreed* to Meta's receipt of their web-browsing data. *See Lloyd*, 2024 WL 3325389, at *2; *Smith*, 845 F. App'x at 8–9. Even under the very cases plaintiffs invoke, to show conduct outside the scope of that consent, plaintiffs at least would have to show the data at issue here is statutorily protected or uniquely sensitive. *Cf. In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (addressing "sensitive financial information" sent by tax-filing service providers); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794 (addressing "protected health information from a medical provider"). Their browsing data on publicly accessible websites with videos of dolphins and gardening tips cannot cut it. The same goes for plaintiffs' speculation (at 5) about inferences that could be drawn based on the kinds of videos people might watch: that logic is not limited to "video viewing" and would encompass general web-browsing habits, but it is settled that Meta's receipt of general browsing activity is lawful. *See Lloyd*, 2024 WL 3325389, at *2; *Smith*, 845 F. App'x at 8–9.

Plaintiffs' novel theory that sharing web-browsing data from *any* webpage with a video clip embedded on it is actionable—no matter whether that data is protected under any statute, and no matter how anodyne the video—is wildly overbroad. That would effectively render the ubiquitous use of commonplace pixel technology impossible, as any website with video content would be barred from using this technology. That is not the law. This Court should reject plaintiffs' invitation to invent a new category of so-called "sensitive" data that would open up a new frontier of litigation against countless web developers that use pixel technology on webpages with video clips and the numerous companies that provide this technology. *Cf. Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (rejecting tort claim based on online tracking because plaintiffs "effectively ask the Court to characterize an entire industry as founded on tortious conduct").

## II. Each Of Plaintiffs' Claims Also Fails For Numerous Other Reasons.

As Meta's motion explained, plaintiffs also fail to plausibly allege several other key elements for each of their claims. Mot. 9–22. Plaintiffs have expressly abandoned three of the six claims they initially asserted, and those claims should be dismissed with prejudice. Opp. 1 n.1; *see, e.g.*, *Homsy v. Bank of Am., N.A.*, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) (dismissal with prejudice appropriate where plaintiffs do not defend claims). Their remaining claims fare no better.

### A. Plaintiffs Fail To State A Claim Under CIPA § 631.

Plaintiffs' claim under CIPA § 631 fails because they do not allege that Meta received the "contents" of any communication; instead, they allege only that Meta received data reflecting their web-browsing activity. But a "webpage address [that] identifies the location of a webpage a user is viewing on the internet" is not "contents." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). That requires dismissal. *See* Mot. 12–13.

Plaintiffs suggest that this argument has been rejected in other cases involving the Meta Pixel. But, critically, those cases involved allegations that Meta received *more* than just data reflecting the plaintiffs' web browsing—for example, the information that plaintiffs typed into form fields on a website. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *6 (plaintiffs alleged Meta received "form field information and/or information affirmatively provided by the website user to the website," such as "filing status, gross income, dependents, [and] social security numbers"); *In re Meta Pixel*

*Healthcare Litig.*, 647 F. Supp. 3d at 795–96 (plaintiffs alleged Meta received data reflecting "log-in buttons and the kinds of descriptive URLs" that revealed "both the 'path' and 'query string'" showing what plaintiffs searched); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *12–13 (N.D. Cal. Aug. 22, 2023) (plaintiff alleged Meta "obtained information showing that [he] communicated with the DMV in order to apply for a disability parking placard and later to check on the status of that application"). None of those cases held that data reflecting generic web-browsing activity on public news and home-improvement websites constitutes "contents," and any such holding would flatly contradict the Ninth Circuit's decision in *Zynga*.

Plaintiffs argue that the Ninth Circuit distinguished *Zynga* in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). That is true, but the distinction does not help plaintiffs here. For one thing, *Facebook Internet Tracking* distinguished *Zynga* on a different issue—reasonable expectations of privacy, not "contents." *See* 956 F.3d at 604–05. And even on that issue, the key distinction was that *Facebook Internet Tracking* involved "a full-string detailed URL" that could reveal "a search term [typed] into Google's search engine," as opposed to a simple URL for a publicly accessible webpage that does not reveal the contents of any such search terms. *Id.* at 605. As Meta explained in its motion, those kinds of URLs *can contain* contents when they "show[] the specific search terms the user had communicated to Google." *Id.* (quotation marks omitted); *see* Mot. 12–13. The problem for plaintiffs, though, is that their complaint never alleges the URLs here *did contain* any such contents; instead, they simply assert that "their video viewing history"—*i.e.*, web-browsing data—is itself content. Opp. 7. *Zynga* already rejected that argument, and *Facebook Internet Tracking* does not revive it. Plaintiffs also simply ignore *In re Nickelodeon Consumer Privacy Litigation*, which expressly invoked *Zynga*'s standard and held that "the file path and video title information contained in the URLs allegedly intercepted" were not "contents." 2014 WL 3012873, at *15 (D.N.J. July 2, 2014); *see* Mot. 13 (citing *Nickelodeon*).[1]

---

[1] Plaintiffs cite *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), but that case does not analyze the "contents" element at all. The passage plaintiffs quote (at 7) considers whether the data at issue qualified as a "communication," a separate element of their claim. *Id.* at *1.

### B. Plaintiffs Fail To State A Claim Under CIPA § 632.

Plaintiffs' CIPA § 632 claim also fails because the statute encompasses only "confidential" communications, and as numerous cases have held, plaintiffs' web-browsing data does not meet that standard. Mot. 13–14.

Plaintiffs quibble over whether there is any "presumption" under California law that internet communications are not confidential. Opp. 8. The existence of the presumption is debatable, but it is ultimately irrelevant here in any event. *Revitch*—a case plaintiffs cite favorably elsewhere in their brief, *see* Opp. 7—surveyed the caselaw and held expressly that "in California, courts have developed a presumption that Internet communications do *not* reasonably give rise to that expectation [of confidentiality]." 2019 WL 5485330, at *3 (emphasis added). Numerous other cases have said the same thing.[2] Plaintiffs identify one case disagreeing with that analysis. Opp. 8 (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023)). The weight of authority contravenes that case, but whether or not a presumption exists, all courts agree on the basic test: a court must ask whether a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002); *accord Brown*, 685 F. Supp. 3d at 936–39; *Revitch*, 2019 WL 5485330, at *3. As *Revitch* explains, generic "browsing activity" does not meet that standard. 2019 WL 5485330, at *3; *see also, e.g.*, *Hubbard*, 2024 WL 3302066, at *7 ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." (emphasis omitted)).

Even *Brown* does not say otherwise. Unlike this case, *Brown* addressed web browsing when the plaintiffs were in "Incognito mode," a special setting that the defendant (Google) had advertised as allowing users to "browse privately"; it was "Google's portrayal of Incognito mode," not web browsing *per se*, that the court held gave rise to an expectation of confidentiality. 685 F. Supp. 3d at 936–39. Similarly, while plaintiffs again invoke (at 8) *In re Meta Pixel Healthcare Litigation*, that case—as

[2] *See, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013).

noted above—acknowledged that "communications with [plaintiffs'] medical providers" are "readily distinguishable" from the generic web-browsing data at issue here. 647 F. Supp. 3d at 799.

Under the controlling "objectively reasonable expectation" test, plaintiffs' complaint clearly falls short. They allege no facts plausibly establishing any objectively reasonable expectation of confidentiality in their web browsing on general news and home-improvement sites. *Flanagan*, 27 Cal. 4th at 776. Plaintiffs simply assert that they had such an expectation "because [their video-viewing information] is a category of information that is protected from disclosure." Opp. 9. But as explained above, plaintiffs *abandoned* any argument that the data at issue here is actually "protected from disclosure" under the VPPA or similar state statutes. *See also* Mot. 8–9 (providing unrebutted arguments that those statutes do not apply). And the lack of confidentiality is further underscored by plaintiffs' agreement to Meta's policies, which explicitly disclosed that Meta would receive data reflecting their activity on third-party websites. *See* Mot. 2–4, 6–9; *People v. Nakai*, 183 Cal. App. 4th 499, 517–18 (2010) (considering disclosures in privacy policy as one reason instant messages were not "confidential").

**C. Plaintiffs Fail To State A Claim Under CIPA § 635.**

Plaintiffs' last remaining claim is that the Pixel—Meta's version of a common internet tool that plaintiffs themselves allege is "widely deployed across many industries," Compl. ¶ 46—is actually an unlawful, contraband spying device whose manufacture, sale, and even possession is a crime. *See* Cal. Penal Code § 635(a). As Meta explained in its motion, however, that claim fails threefold: there is no private right of action for this criminal claim, the Pixel is not inherently unlawful, and plaintiffs failed to plausibly allege Meta's scienter even if it were. Mot. 14–19.

In response, plaintiffs largely rehash the decision allowing this claim in *In re Meta Pixel Tax Filing Cases*. Opp. 9–12. But Meta's motion acknowledged that decision and explained at length why, respectfully, its analysis is inconsistent with the text of the statute and the weight of authority—indeed, plaintiffs' counsel has shopped this claim from court to court, and courts have repeatedly rejected it (including in a case involving the same lead plaintiff here, Mary Yoon). Mot. 14–19; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (dismissing § 635 claim brought by same lead plaintiff and same counsel); *see also, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523–24

(C.D. Cal. 2021) (dismissing § 635 claim brought by same counsel); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 835 (N.D. Cal. 2021) (same); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (same). Plaintiffs do not address those decisions, and their repeated invocations of *In re Meta Pixel Tax Filing Cases* are unresponsive to Meta's arguments that the case was wrongly decided. Meta stands by those arguments.[3]

To the extent plaintiffs do engage, their counterarguments do not move the needle. In response to Meta's argument that they lack a private cause of action, plaintiffs suggest that "if [they] lack an injury as Meta contends, then Article III standing is absent" and the Court should remand to state court rather than dismiss. Opp. 9–10. That misapprehends the argument, which is about statutory standing rather than Article III standing—and thus implicates only whether plaintiffs have pleaded the extent and kind of injury necessary to state a claim under this particular statute, not this Court's jurisdiction. Plaintiffs lack a cause of action because the injuries they assert were caused by certain websites' allegedly improper *use* of the Pixel (assuming for argument's sake that any such use was actually improper), not by Meta's *creation* of the Pixel (a standard and ubiquitous internet tool)—in other words, even if plaintiffs have asserted injuries, they have not asserted the sort of injuries that establish a private cause of action for a § 635 claim. *See Yoon*, 549 F. Supp. 3d at 1085; Mot. 15–17. Dismissal, not remand, is thus the proper course.

Plaintiffs also argue on the merits that the widespread use of pixel technology is "outside the pleadings" and "does not establish as a matter of law that the pixel is benign." Opp. 11. But that issue is not outside the pleadings, because plaintiffs themselves allege that "[t]he pixel is widely deployed across many industries." Compl. ¶ 46. They do *not* allege that widespread use is all unlawful, nor could they plausibly do so. And that is dispositive, because claims that a particular piece of technology is unlawful contraband will not lie where "companies engaged in legitimate business" use the technology. *Directv Inc. v. Little*, 2004 WL 1811153, at *8 (N.D. Cal. Aug. 12, 2004) (analyzing analogous

---

[3] Plaintiffs also cite *Revitch*, which allowed a claim under § 635 to survive dismissal. 2019 WL 5485330, at *3. But that case involved different technology and contained just a couple sentences of analysis, so its utility here is limited. *Id.*; *see also Saleh*, 562 F. Supp. 3d at 523 (finding no private cause of action for § 635 claim and noting *Revitch* "did not consider" the question).

federal claim); *see also, e.g.*, *United States v. Lande*, 968 F.2d 907, 910 (9th Cir. 1992) (same, and allowing criminal case to proceed where it was "difficult to imagine any [legitimate] purpose" for the technology). This state statute, like its federal counterpart, is "narrowly drawn" to "leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978) (analyzing analogous federal claim). The widespread, legitimate use of pixel technology thus defeats this claim.

For scienter—which requires plausible allegations that Meta provided the Pixel to web developers *knowing* that it would be primarily used for unlawful activity, *see* Mot. 18–19—plaintiffs simply argue that Meta's business model is based on data collection and that collecting video-viewing data is "consistent with [that] business model." Opp. 11. But this case does not involve any statutorily protected or otherwise sensitive data. Any knowledge that the Pixel would be used on websites like USAToday.com or HGTV.com thus would not equate to knowledge that the Pixel would be used unlawfully. And, even if this case did involve statutorily protected, sensitive data, plaintiffs ignore the fact that Meta's policies, which their complaint quotes, instruct third parties that use the Pixel *not* to send "sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." Compl. ¶ 84 (quoting Meta's Business Tools Terms; emphasis omitted). It is blackletter law that plaintiffs cannot state a claim by alleging facts that are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Here, even assuming plaintiffs could show that their web-browsing data were somehow statutorily protected or sensitive, they allege no *facts* plausibly showing that Meta intended for third parties to send it data that its policies expressly forbade.

## CONCLUSION

The Court should dismiss the complaint with prejudice.

DATED: July 29, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: July 29, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman