# Proposed Redacted Version of Defendant Meta Platforms, Inc.'s Response to the Order to Show Cause Regarding CAFA Jurisdiction

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARY YOON, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 5:24-cv-02612-NC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING CAFA JURISDICTION**<br><br>Action Filed: March 27, 2024<br>Honorable Nathanael M. Cousins |

**INTRODUCTION**

Plaintiffs' complaint in this case asserts claims against Meta on behalf of a nationwide putative class encompassing "[a]ll people in the United States who watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, or PBS.com while those websites used the Meta pixel, SDK, and/or Conversions API." Dkt. 1-3 ("Am. Compl.") ¶ 103. On December 6, 2024, this Court ordered Meta to "show cause in writing by December 13, 2024, why this case has the requisite 100-person numerosity required for the Court to have jurisdiction under CAFA." Dkt. 44 at 2. CAFA jurisdiction is secure because, as explained below, the number of people "in the United States who watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, [and] PBS.com while those websites used the Meta Pixel, SDK, and/or Conversions API" "more likely than not" exceeds 100. While Meta intends to oppose class certification and expressly reserves all rights to oppose class certification, to object to the scope of the class, and to contest the merits of plaintiffs' claims (including based on statute-of-limitations issues), for purposes of the jurisdictional requirements only, Meta asserts that all requirements for federal jurisdiction under CAFA are met and that this Court has original jurisdiction over this matter.

**BACKGROUND**

On November 19, this Court issued an order "to show cause why this case should not be remanded back to state court for lack of subject matter jurisdiction" following plaintiffs' "withdrawal of their only federal claims." Dkt. 34. In response to the Court's order, Meta argued that the Court's jurisdiction remains secure for two independent reasons: (1) "the Court has original jurisdiction over all of plaintiffs' claims under the Class Action Fairness Act," and (2) plaintiffs' post-removal withdrawal of their federal-law claims "did not divest the Court of jurisdiction" in any event. Dkt. 36 at 1.

That same day, this Court ordered plaintiffs to address Meta's assertion of CAFA jurisdiction. Dkt. 37. On December 5, plaintiffs agreed with Meta: they stated that "Meta's statement that this Court has jurisdiction as a result of the alleged nationwide class is correct," and that they therefore had "no objection to this Court's jurisdiction over this case." Dkt. 43. On December 6, this Court ordered Meta "to show cause why this case has the requisite 100-person numerosity required for the Court to have jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)." Dkt. 44. at 1. It

directed a written response from Meta by December 13.  *Id.* at 2.

## ARGUMENT

CAFA's numerosity requirement is satisfied because plaintiffs' putative class "more likely than not" easily exceeds 100 members. *Fergerstrom v. PNC Bank, N.A.*, 2014 WL 1669101, at *8 (D. Haw. Apr. 25, 2014) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). Plaintiffs allege a nationwide class on behalf of "[a]ll people in the United States who watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, or PBS.com while those websites used the Meta pixel, SDK, and/or Conversions API." Am. Compl. ¶ 103. Given the broad scope of that class, it is "easily conceivable" that the class far exceeds 100 members. *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 48 (9th Cir. 2018). Although the complaint alleges that "[t]here are at least 40 members of the proposed Class," it makes clear that placeholder figure is merely a floor and that "the true number is almost certainly much higher." Am. Compl. ¶ 106. The complaint does not state a "precise number" because the exact size of the class plaintiffs seek to represent, and the identities of the myriad individuals it includes, are "unknown to Plaintiff[s]." *Id.* The difficulty of ascertaining the putative class's membership will be one of several serious problems if and when plaintiffs seek class certification, but it casts no doubt on CAFA numerosity. Plaintiffs' agreement that CAFA's jurisdictional requirements are met (Dkt. 43) confirms that they understand the "nationwide class" alleged in their own complaint far exceeds 100 individuals.

Given the complaint's lack of precision on this point, however, the Court directed Defendant to prove by a preponderance of the evidence "that the aggregate number of proposed plaintiffs is a hundred or higher" since "Plaintiffs' complaint did not allege a specific class size." Dkt. 44 at 2. The evidence Meta now submits for the Court's consideration establishes that plaintiffs' proposed class exceeds the 100-person numerosity required for CAFA jurisdiction. "Where it is unclear or ambiguous from the face of a state court complaint that jurisdictional requirements are met," the defendant's burden is simply to "prove such requirements by a preponderance of the evidence." *Fergerstrom*, 2014 WL 1669101, at *8 (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)). The defendant need

only "provide evidence establishing that it is 'more likely than not' that jurisdiction exists," *id.*, including "summary-judgment-type evidence" such as "affidavits and interrogatories," *Mook v. Regis Corp.*, 2009 WL 10672049, at *2 (S.D. Cal. Feb. 18, 2009); *Coit v. Fid. Assur. Assocs., LLC*, 2008 WL 3286978, at *3 (N.D. Cal. Aug. 6, 2008).  The evidence Meta presents readily clears that bar.  The evidence shows that well over 100 people "watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, or PBS.com" during the period when those sites used the Meta Pixel.[1]  Am. Compl. ¶ 103.  Whatever the putative class's exact size, it is well above 100.

### 1. PBS.com

It is "more likely than not" that PBS.com had more than 100 people who watched videos on its site while it used the Meta Pixel.  PBS's own website, citing Google Analytics data from October 2022 to September 2023, notes that "[e]ach month . . . more than 16 million viewers watch video[s] on PBS's site."  Declaration of Elizabeth McCloskey ("McCloskey Decl.") Exs. 4, 5.  Other publicly available websites similarly indicate that "tens of millions of viewers [] stream video on PBS's website and mobile apps."  McCloskey Decl. Ex. 6 at 1.  PBS.com was using the Meta Pixel during the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ time period, and was still using the Meta Pixel ▮▮▮▮▮▮▮▮▮▮.  Declaration of Qiwen ("Carrol") Xia (Xia Decl.) ¶ 8.

### 2. Bloomberg.com

It is "more likely than not" that Bloomberg.com had more than 100 people who watched videos on its site while it used the Meta Pixel.  As early as 2015, Bloomberg announced its "best video month ever" with "16.9 million unique viewers worldwide" and 120 million "[v]ideo streams."  McCloskey Decl. Ex. 7 at 1.  Evidence from other publicly available websites indicates that Bloomberg's website visits have continued to grow, with 63.22 million people visiting the site in October 2024.  McCloskey Decl. Ex. 8.  Bloomberg.com was using the Meta Pixel in ▮▮▮, and was still using the Meta Pixel ▮▮▮▮▮▮▮▮▮▮.  Xia Decl. ¶ 6.

---

[1] Given that the data from the Meta Pixel alone establishes that the "aggregate number of proposed plaintiffs is a hundred or higher," Dkt. 44 at 1, Meta did not separately evaluate data concerning the two other Meta Business Tools referenced in plaintiffs' proposed class definition: SDK and Conversions API, *see* Am. Compl. ¶ 103.

### 3. HGTV.com

It is "more likely than not" that more than 100 people watched videos on HGTV.com's website while it used the Meta Pixel. Evidence from publicly available tax documents demonstrates that HGTV had "approximately 82 million" users in the U.S. as of December 31, 2021. McCloskey Decl. Ex. 1 at 9. Evidence from other publicly available websites indicates that 16.15 million users visited HGTV's website in October 2024 alone. McCloskey Decl. Ex. 2. HGTV.com was using the Meta Pixel in ▇, and was still using the Meta Pixel ▇. Xia Decl. ¶ 5. Even if only a fraction of website visitors viewed videos on HGTV.com, that would equate to well over 100 people.

### 4. USA Today.com

It is "more likely than not" that more than 100 people watched videos on USAToday.com's website while it used the Meta Pixel. Evidence from publicly available tax filings suggests that millions of people interacted with USAToday.com's website in 2023. *See* McCloskey Decl. Ex. 9 at 4. Gannett Company (USAToday's owner) proclaims: "We reach approximately 1 in 2 adults in the U.S., led by USA TODAY and amplified by local media brands within the USA TODAY NETWORK." *Id*. at 5. Gannett Company goes on to explain that, in 2023, its media network, "which includes USA TODAY," "had a total digital audience of approximately 136 million monthly unique visitors, on average." *Id*. Publicly available websites indicate there were 171.23 million visitors to USAToday.com in October 2024 alone. McCloskey Decl. Ex. 10. USAToday.com was using the Meta Pixel in ▇, and was still using the Meta Pixel ▇. Xia Decl. ¶ 7. Even if only a fraction of website visitors viewed videos on USAToday.com, that would equate to well over 100 people.

### 5. 247Sports.com

It is "more likely than not" that more than 100 people watched videos on 247Sports.com's website while it used the Meta Pixel. Evidence from publicly available sources indicates that 247Sports had "more than 20 million monthly unique users according to Google Analytics." McCloskey Decl. Ex. 11 at 2. In 2016, for example, "247Sports registered 22.754 million unique users" and "reach[ed] 8.8% of the total U.S. internet audience and placed No. 10 overall in the sports category." *Id*. This is in line with 247 Sports' own description from August 2022 as a "top-10 overall digital sports media

brand" which "reaches millions of fans." McCloskey Decl. Ex. 12 at 1. 247Sports.com was using the Meta Pixel in ███, and was still using the Meta Pixel ███████████. Xia Decl. ¶ 9. Here, too, even if only a fraction of those unique users and fans viewed videos on the site, that would equate to well over 100 individuals.

*****

This evidence is more than enough to "establish[] that it is 'more likely than not' that jurisdiction exists." *Fergerstrom*, 2014 WL 1669101, at *8. Case law is in accord. For example, in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, the Ninth Circuit affirmed a finding that the defendant had proven it was more likely than not that CAFA's numerosity requirement was met when the defendant filed a declaration asserting there were at least 7,571 employees who fell within plaintiff's purported class. *See* 479 F.3d 994, 997, 1001 (9th Cir. 2007). The court did so despite the absence of an allegation in the plaintiff's complaint asserting that number. *Id*. at 997. In her complaint, the plaintiff asserted the class "'exceed[ed] 30 persons' but admitt[ed] that '[t]his number may increase, depending upon the turnover rate for employees' of U.S. Bank." *Id*. Presented with the declaration from the defendant, the court concluded "there are potentially thousands of former employees of U.S. Bank that are eligible class members" and therefore the suit "satisfie[d] CAFA's requirements of minimal diversity and numerosity." *Id*.

Similarly, the Ninth Circuit in *Franz v. Beiersdorf, Inc.* held that a "district court erred by *sua sponte* dismissing Plaintiff's claim" for failure to meet CAFA's jurisdictional requirements where "it [was] easily conceivable" that the jurisdictional requirement was met and where the defendant did not contest the particular requirement. 745 F. App'x at 48. The plaintiff alleged a proposed class that included "all California consumers" who purchased a specific product within the applicable statute of limitations. *Id*. Because the defendant allegedly sold that product "online and in virtually every major food, drug, and mass retail outlet," "[i]t [was] easily conceivable that Defendant sold the product 500,000 times in a state the size of California over a multi-year period." *Id*.

Here, similarly, for every website above it is "more likely than not" that each had more than 100 visitors who watched videos on their sites during the time those websites used the Meta Pixel—

and a virtual certainty that the putative class exceeds 100. To be clear, Meta maintains that no class should be certified and intends to oppose class certification vigorously. But solely for present purposes it is beyond serious doubt that the putative class clears CAFA's floor and that "a preponderance of evidence" set forth above shows "that the aggregate number of proposed plaintiffs is a hundred or higher." Dkt. 44 at 2. As a result, it is "more likely than not" that CAFA's 100-person numerosity requirement is satisfied.

## CONCLUSION

This court has original jurisdiction over all of plaintiffs' claims under CAFA.

DATED: December 13, 2024            **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman