GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| MARY YOON, ET AL., | | Case No. 5:24-cv-02612-NC |
| | Plaintiffs, | **DEFENDANT META PLATFORMS, INC.'S AMENDED ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | | |
| META PLATFORMS, INC., | | Action Filed: March 27, 2024 |
| | Defendant. | Honorable Nathanael M. Cousins |

Defendant Meta Platforms, Inc. ("Meta") hereby answers the First Amended Class Action Complaint filed by plaintiffs on April 12, 2024 ("FAC") according to its numbered paragraphs as follows below. Meta denies all allegations in the FAC not expressly admitted herein. By filing this Amended Answer, Meta does not waive—and hereby expressly preserves—its defenses under Federal Rule of Civil Procedure 12(b) or any other defenses asserted in future motions or submissions to the Court.

## INTRODUCTION

1.      Meta admits that plaintiffs purport to bring this lawsuit as a class action "on behalf of everyone in the United States who watched videos on HGTV.com, Bloomberg.com, USAToday.com, 247Sports.com, or PBS.com," but denies that class certification is appropriate for this case. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 1.

2.      Meta lacks sufficient information to admit or deny the allegations in the first sentence in paragraph 2. The allegations in the second sentence of paragraph 2 are conclusions of law, to which no further responsive pleading is required. To the extent a response is required, Meta denies the allegations in the second sentence of paragraph 2. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 2.

3.      Meta admits that it operates Facebook, which includes the internet site Facebook.com. The allegations in the second sentence of paragraph 3 contain conclusions of law, for which no further responsive pleading is required. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 3.

4.      The allegations in the first sentence of paragraph 4 contain conclusions of law, for which no further responsive pleading is required. To the extent a response is required, Meta denies the allegations in the first sentence of paragraph 4. With respect to the second and third sentences in paragraph 4, Meta admits Facebook users sued Meta (formerly referred to as Facebook) alleging Facebook violated the Federal Wiretap Act and that this lawsuit resulted in a settlement. With respect to the fourth sentence of paragraph 4, Meta admits there is a 2012 consent agreement between Meta and the Federal Trade Commission, which speaks for itself. Meta otherwise denies the allegations in

Gibson, Dunn & Crutcher LLP

the fourth sentence of paragraph 4. With respect to the fifth sentence of paragraph 4, Meta admits that plaintiffs purport to cite to a Federal Trade Commission document, which speaks for itself, and no further responsive pleading is required. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 4.

## JURISDICTION AND VENUE

5.     The allegations in paragraph 5 contain conclusions of law, for which no responsive pleading is required. Meta lacks information sufficient to admit or deny the allegations in paragraph 5 regarding persons or entities other than Meta. To the extent a response is required, Meta admits that it offers services to people in California. Except as expressly stated, Meta otherwise denies the allegations in paragraph 5.

6.     The allegations in paragraph 6 contain conclusions of law, for which no responsive pleading is required. To the extent a response is required, Meta admits that its headquarters is in Menlo Park, San Mateo County, California and that it offers services to people in California. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 6.

## PARTIES

7.     Meta admits that plaintiff Mary Yoon has had a Facebook Account. Meta lacks information sufficient to admit or deny the remaining allegations in paragraph 7. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 7.

8.     Meta admits that plaintiff William Martin has had a Facebook Account. Meta lacks information sufficient to admit or deny the remaining allegations in paragraph 8. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 8.

9.     Meta admits that plaintiff Kat Walker has had a Facebook Account. Meta lacks information sufficient to admit or deny the remaining allegations in paragraph 9. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 9.

10.     Meta admits that Facebook users can create profiles in which they can choose to provide certain information. Meta also admits it operates Facebook.com and offers its services to people in

California and other states. Meta also admits that it develops, owns, and operates facebook.com. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 10.

11. The allegations in paragraph 11 contain conclusions of law, for which no responsive pleading is required. To the extent a response is required, Meta admits that it is headquartered in Menlo Park, California. Meta admits that at certain times Meta's Terms of Service have contained a California choice-of-law provision. Meta further admits that plaintiffs purport to cite a court filing which speaks for itself. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 11.

## FACTUAL ALLEGATIONS

### The Evolution Of Meta's Business Model: From Social Media To Surveillance

12. Meta admits that it operates Facebook, which includes the internet site Facebook.com. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 12.

13. Meta admits that on October 24, 2007, Meta and Microsoft Corporation announced that Microsoft would take a $240 million equity stake in Meta's next round of financing at a $15 billion valuation. Meta admits that the allegations in paragraph 13 appear to reference a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required. Meta lacks information sufficient to admit or deny the remaining allegations in paragraph 13.

14. Meta admits that the allegations in paragraph 14 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 14.

15. Meta admits that in 2007 it introduced Facebook Ads, an ad system for businesses to connect with users and target advertising to the exact audiences they want. Meta admits that the allegations in paragraph 15 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required. Meta lacks information sufficient to admit or deny the remaining allegations in paragraph 15.

16. Meta admits that the allegations in paragraph 16 purport to paraphrase and quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 16.

17.    Meta respectfully refers the Court to Meta's Form 10-Ks, which speak for themselves, for information regarding Meta's revenue.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 17.

18.    Meta admits that it informs prospective advertisers that they can use ad targeting.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 18.

19.    Meta admits that the allegations in paragraph 19 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  To the extent a response is required, Meta admits that it asks users to use the same name on Facebook that they use in everyday life.  Meta admits that it asks users to enter their date of birth and gender when creating a Facebook account.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 19.

20.    Meta admits that Facebook users can create profiles in which they can choose to provide certain information.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 20.

21.    Meta admits that it provides a Core Audiences feature that allows advertisers to set the parameters for their target audience based on criteria like demographics, location, interests, online behaviors and connections.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 21.

### The Wiretapping Devices:  Meta's Tracking Pixel and Similar Business Tools

23.    Meta admits that the allegations in paragraph 23 quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  Meta also admits that it makes available certain Business Tools which are optional technologies that can help website owners and publishers, app developers, and business partners (including advertisers and others) who agree to the Meta Business Tools Terms, understand and measure their products and services and better reach and serve people who use or might be interested in their products and services.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 23.

24.    Meta admits that the Meta Pixel is a free, publicly available piece of code that third-party developers can embed in their websites to measure visitor activity and share that data with Meta

META'S AMENDED ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-02612-NC

so that developers can better understand the effectiveness of their advertising, subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 24.

25.    Meta admits that the allegations in paragraph 25 appear to quote from Meta's developer documentation regarding the Meta Pixel, which speaks for itself, and no responsive pleading is required.  To the extent plaintiffs mischaracterize those documents, Meta denies the allegations in paragraph 25.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 25.

26.    Meta admits that the allegations in paragraph 26 reference Meta's developer documentation regarding the Meta Pixel, which speaks for itself, and no responsive pleading is required.  To the extent plaintiffs mischaracterize those documents, Meta denies the allegations in paragraph 26.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 26.

27.    Meta denies each and every allegation in paragraph 27.

28.    Meta admits that the allegations in paragraph 28 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 28.

29.    Meta admits that the allegations in paragraph 29 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 29.

30.    Meta admits that the allegations in paragraph 30 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 30.

31.    Meta admits that when a developer chooses to configure the Meta Pixel to measure an action that an individual takes on the developer's website, and subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms, the

website may send Meta certain data.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 31.

32.    The allegations in paragraph 32 contain conclusions of law, for which no responsive pleading is required.  In addition, Meta lacks information sufficient to admit or deny the allegations in paragraph 32 regarding persons or entities other than Meta.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 32.

33.    The allegations in paragraph 33 contain conclusions of law, for which no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 33.

34.    Meta lacks information sufficient to admit or deny the allegations in paragraph 34. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 34.

35.    Meta admits that it may be able to match data to Meta accounts in certain instances, including by using cookies.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 35.

36.    Meta admits that it may be able to match data to Meta accounts in certain instances, including by using cookies.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 36.

37.    The allegations in paragraph 37 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that the allegations in paragraph 37 appear to quote from a document, which speaks for itself, and no responsive pleading is required. To the extent a response is required, Meta admits that it offers "automatic advanced matching," which allows third-party web developers, subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, Commercial Terms and the configurations set by the third-party developer, to send Meta data relating to visitors of the developers' websites.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 37.

38.    The allegations in paragraph 38 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that with advanced matching, developers can send Meta hashed customer data along with the developer's Meta Pixel events, which

can help the developer attribute more conversions and reach more people.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 38.

39.    The allegations in paragraph 39 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that third parties may incorporate the Meta Pixel into their websites and use it to transmit data to Meta (whether or not a user is logged into an account on Meta technologies) consistent with Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 39.

40.    Meta denies each and every allegation in paragraph 40.

41.    Meta admits that third parties may send data to Meta via the Business Tools (whether or not a user is logged into an account on Meta technologies).  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 41.

42.    The allegations in paragraph 42 contain conclusions of law, for which no responsive pleading is required.  Except as expressly stated, Meta denies each and every allegation in paragraph 42.

43.    Meta admits that the Meta Pixel is a free, publicly available piece of code that third-party developers can embed in their websites to measure visitor activity and share that data with Meta consistent with Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms to improve Meta's features and technologies in a variety of ways, including to promote safety and security.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 43.

44.    Meta admits that the allegations in paragraph 44 purport to quote from a document, which speaks for itself, and no responsive pleading is required.  Meta further admits that it provides features that help advertisers to reach audiences based on interests.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 44.

45.    Meta admits that it derives revenue, in part, from the use of its targeted advertising feature, and that this feature uses data, including data provided to Meta in accordance with Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and

Gibson, Dunn & Crutcher LLP

7

Commercial Terms, to help advertisers deliver ads.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 45.

46.    Meta admits that the Meta Pixel is a free, publicly available piece of code that can be used by third-party developers.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 46.

47.    Meta admits that it announced the Facebook Pixel (now known as the Meta Pixel) on October 14, 2015.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 47.

48.    Meta admits that the allegations in paragraph 48 purport to quote from multiple documents, which speak for themselves, and no responsive pleading is required.  Meta also admits that it offers a Business Tool called the Facebook SDK for App Events that can be used to log events that visitors take on an application.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 48.

49.    The allegations in paragraph 49 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that the allegations in paragraph 49 purport to quote from multiple documents, which speak for themselves, and no responsive pleading is required.  Meta also admits that it offers a Business Tool called Conversions API, which is designed to create a connection between an advertiser's marketing data and Meta systems that optimize ad targeting, decrease cost per result, and measure outcomes.  To the extent plaintiffs mischaracterize those documents, Meta denies the allegations in paragraph 49.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 49.

***Meta Secretly Hoovers Up Vast Amounts Of Private Video Viewing Information And Matches That Information With Website Users***

50.    Meta admits that when a developer chooses to configure the Meta Pixel to measure an action that an individual takes on the developer's website, and subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms, the website may send Meta certain data.  Meta further admits that the Conversions API Business Tool is designed to create a connection between an advertiser's marketing data and Meta systems and that it

offers a Business Tool called the Facebook SDK for App Events that can be used to log events that visitors take on an application. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 50.

51. Meta admits it receives data via the Meta Pixel from third parties (whether or not it relates to an account on Meta technologies), and uses that data in accordance with its Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 51.

52. Meta lacks information sufficient to admit or deny the allegations in paragraph 52.

53. Meta lacks information sufficient to admit or deny the allegations in paragraph 53 regarding the actions, experiences, or knowledge of persons or entities other than Meta.

54. The allegations in the first sentence of paragraph 54 contain conclusions of law, for which no responsive pleading is required. With respect to the remaining allegations in paragraph 54, Meta admits that it may be able to match data to Meta accounts in certain instances, including by using cookies. Meta otherwise denies each and every allegation in paragraph 54.

55. Meta admits that it makes available certain Business Tools, such as the Meta Pixel, Conversions API, and the Facebook SDK for App Events, which are optional technologies that help website owners and publishers, app developers, and business partners (including advertisers and others) who agree to the Meta Business Tools Terms, understand and measure their products and services and better reach and serve people who use or might be interested in their products and services. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 55.

56. The allegations in paragraph 56 contain conclusions of law, for which no responsive pleading is required. To the extent a response is required, Meta admits that when a developer chooses to configure the Meta Pixel to measure an action that an individual takes on the developer's website, and subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms, the website may send Meta certain data. Meta further admits that it uses data that is received via the Meta Pixel from third parties in certain ways, including to personalize Meta technologies; to provide, test, and improve Meta technologies; to promote safety, security, and integrity on Meta's technologies; to tailor ads that are shown on Meta technologies; for

META'S AMENDED ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-02612-NC

business intelligence and analytics; to research and innovate for social good; and to share with law enforcement and respond to legal requests.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 56.

HGTV and The Facebook Pixel

57.    Meta lacks information sufficient to admit or deny the allegations in paragraph 57.

58.    Meta lacks information sufficient to admit or deny the allegations in paragraph 58.

59.    Meta lacks information sufficient to admit or deny the allegations in paragraph 59.

60.    Meta lacks sufficient information to admit or deny the allegations in paragraph 60.  To the extent a response is required, Meta denies the allegations in paragraph 60.

61.    Meta lacks sufficient information to admit or deny the allegations in paragraph 61.  To the extent a response is required, Meta denies the allegations in paragraph 61.

62.    Meta lacks sufficient information to admit or deny the allegations in paragraph 62.  To the extent a response is required, Meta denies the allegations in paragraph 62.

63.    Meta lacks sufficient information to admit or deny the allegations in paragraph 63.  To the extent a response is required, Meta denies the allegations in paragraph 63.

64.    Meta admits that, subject to Meta's Terms of Use, Data Policy (now known as Meta's Privacy Policy), Cookies Policy, a Facebook user's "Ad Preferences" selection in the Accounts Center (which provides users with certain controls over how their data is used for advertising), and a user's Ad Settings selections in Account Center (where users can opt out of receiving personalized advertisements based on their activity on third-party websites, apps, or offline, among other things), a developer may choose to transmit  a c_user cookie value with Meta when the user is logged into their Facebook accounts.  Meta further admits that the c_user cookie value is unique to each Facebook account.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 64.

65.    Meta lacks information sufficient to admit or deny the allegations in paragraph 65 regarding the actions or knowledge of persons or entities other than Meta.

Bloomberg.com and The Facebook Pixel

66.    Meta lacks information sufficient to admit or deny the allegations in paragraph 66.

67.    Meta lacks information sufficient to admit or deny the allegations in paragraph 67.

68.   Meta lacks sufficient information to admit or deny the allegations in paragraph 68.  To the extent a response is required, Meta denies the allegations in paragraph 68.

USA Today.com and The Facebook Pixel

69.   Meta lacks information sufficient to admit or deny the allegations in paragraph 69.

70.   Meta lacks information sufficient to admit or deny the allegations in paragraph 70.

71.   Meta lacks sufficient information to admit or deny the allegations in paragraph 71.  To the extent a response is required, Meta denies the allegations in paragraph 71.

PBS.com and The Facebook Pixel:

72.   Meta lacks information sufficient to admit or deny the allegations in paragraph 72.

73.   Meta lacks sufficient information to admit or deny the allegations in paragraph 73.

74.   Meta lacks sufficient information to admit or deny the allegations in paragraph 74.  To the extent a response is required, Meta denies the allegations in paragraph 74.

247Sports.com and The Facebook Pixel

75.   Meta lacks information sufficient to admit or deny the allegations in paragraph 75.

76.   Meta lacks sufficient information to admit or deny the allegations in paragraph 76.

77.   Meta lacks sufficient information to admit or deny the allegations in paragraph 77.  To the extent a response is required, Meta denies the allegations in paragraph 77.

***Meta Did Not Receive Consent To Receive Video Viewing Information***

78.   The allegations in paragraph 78 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that Facebook users must agree to the operative Terms of Service, Data Policy (now known as Meta's Privacy Policy), and Cookies Policy to use Facebook and that, as part of agreeing to these terms, Facebook users permit Meta to receive and use certain data.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 78.

79.   The allegations in paragraph 79 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that Facebook users must agree to the operative Terms of Service, Data Policy (now known as Meta's Privacy Policy), and Cookies Policy to use Facebook and that, as part of agreeing to these terms, Facebook users permit Meta to

receive and use certain data.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 79

80.    Meta denies each and every allegation in paragraph 80.

81.    Meta denies each and every allegation in paragraph 81.

82.    Meta denies each and every allegation in paragraph 82.

83.    The allegations in paragraph 83 contain conclusions of law, for which no responsive pleading is required.  Meta also lacks information sufficient to admit or deny the allegations in paragraph 83 regarding persons or entities other than Meta.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 83.

84.    The allegations in paragraph 84 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that paragraph 84 purports to cite to and quote from multiple documents, which speak for themselves, and no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 84.

85.    The allegations in paragraph 85 contain conclusions of law, for which no responsive pleading is required.  Meta admits that the allegations in the second sentence of paragraph 85 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 85.

### Meta Intentionally Obtained Video Viewing Information

86.    Meta denies each and every allegation in paragraph 86.

87.    Meta lacks information sufficient to admit or deny the allegations in the first sentence of paragraph 87.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 87.

88.    The allegations in paragraph 88 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that developers are ultimately responsible for the data that they share with Meta and are in the best position to ensure their integration of the Meta Pixel, Conversions API, and Facebook SDK for App Events does not send sensitive or

prohibited data to Meta.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 88

89.    Meta admits that it employs account managers who assist with supporting Meta clients, including through education and support.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 89.

90.    Meta denies each and every allegation in paragraph 90.

91.    Meta admits that it requires third-party businesses to accept terms governing Meta's provision of the Meta Business Tools that require third-party businesses to have all necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations, and industry guidelines)—including any necessary consents from consumers —for data they share with Meta.  Meta contractually prohibits third-party businesses from sending Meta sensitive data via the Meta Business Tools and takes steps to further educate third parties about these contractual obligations.

92.    The allegations in paragraph 92 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 92.

93.    The allegations in paragraph 93 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 93.

94.    The allegations in paragraph 94 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 94.

## TOLLING, CONCEALMENT, AND ESTOPPEL

95.    The allegations in paragraph 95 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies the allegations in paragraph 95.

96.    Meta denies each and every allegation in paragraph 96.

97.     The allegations in paragraph 97 contain conclusions of law, for which no responsive pleading is required.  Meta further lacks information sufficient to admit or deny the allegations in paragraph 97.

98.     The allegations in paragraph 98 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 98.

99.     The allegations in paragraph 99 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 99.

100.     Meta admits that Activity Off-Meta Technologies (formerly known as the Off-Facebook Activity Tool) allows users to see and control the data that other apps and websites share with Facebook.  Meta further admits that the allegations in the first sentence of paragraph 100 purport to quote from a document (that plaintiffs do not cite), which speaks for itself, and no responsive pleading is required.  To the extent plaintiffs mischaracterize those documents, Meta denies the allegations in paragraph 100.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 100.

101.     The allegations in paragraph 101 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 101.

**CLASS ACTION ALLEGATIONS**

103.     Meta admits that plaintiffs purport to bring this action on behalf of the members of the purported class referenced in paragraph 103.  Meta denies that class certification is appropriate for this case.

104.     Meta admits that plaintiffs purport in paragraph 104 to reserve their right to revise their class definition.  Meta denies that class certification is appropriate for this case.

105.     Meta admits that plaintiffs seek to exclude certain individuals and entities from the proposed class definition.  Meta denies that class certification is appropriate for this case.

106.    The allegations in paragraph 106 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta lacks information sufficient to admit or deny the allegations in paragraph 106.  Meta denies that class certification is appropriate for this case.

107.    The allegations in paragraph 107 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta lacks information sufficient to admit or deny the allegations in paragraph 107.  Meta denies that class certification is appropriate for this case.

108.    The allegations in paragraph 108 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta lacks information sufficient to admit or deny the allegations in paragraph 108.  Meta denies that class certification is appropriate for this case.

109.    The allegations in paragraph 109 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta lacks information sufficient to admit or deny the allegations in paragraph 109 regarding persons or entities other than Meta.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 109.  Meta denies that class certification is appropriate for this case.

110.    The allegations in paragraph 110 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 110.  Meta denies that class certification is appropriate for this case.

111.    The allegations in paragraph 111 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 111.  Meta denies that class certification is appropriate for this case.

META'S AMENDED ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-02612-NC

# CLAIMS FOR RELIEF

## COUNT I

### Violation Of The Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*

112. The allegations in paragraph 112 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

113. The allegations in paragraph 113 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

114. The allegations in paragraph 114 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

115. The allegations in paragraph 115 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

116. The allegations in paragraph 116 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

117. The allegations in paragraph 117 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

118. The allegations in paragraph 118 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

119. The allegations in paragraph 119 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

Gibson, Dunn & Crutcher LLP

120.    The allegations in paragraph 120 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

121.    The allegations in paragraph 121 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

122.    The allegations in paragraph 122 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

123.    The allegations in paragraph 123 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

124.    The allegations in paragraph 124 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

125.    The allegations in paragraph 125 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

126.    The allegations in paragraph 126 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

127.    The allegations in paragraph 127 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

128.    The allegations in paragraph 128 relate to Count I of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024. (ECF No. 29). Accordingly, no response is required.

## COUNT II

### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

129.   Meta hereby incorporates by reference its response to the preceding paragraphs as if fully set forth herein.

130.   Meta admits that plaintiffs purport to bring this claim individually and on behalf of the members of the nationwide class in paragraph 130.  Meta denies that class certification is appropriate for this case.

131.   The allegations in paragraph 131 contain conclusions of law and purport to quote from Cal. Penal Code § 630, to which no responsive pleading is required.   To the extent a response is required, Meta admits that plaintiffs correctly quote in part Cal. Penal Code § 630.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 131.

132.   The allegations in paragraph 132 contain conclusions of law and purport to quote from Cal. Penal Code § 631(a), to which no responsive pleading is required.   To the extent a response is required, Meta admits that plaintiffs correctly quote in part Cal. Penal Code § 631(a).   Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 132.

133.   The allegations in paragraph 133 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 133.

134.   The allegations in paragraph 134 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that its principal place of business is in Menlo Park, San Mateo County, California and that it conducts business in California. Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 134.

135.   The allegations in paragraph 135 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 135.

Gibson, Dunn &
Crutcher LLP

136.    The allegations in paragraph 136 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 136.

137.    Meta denies each and every allegation in paragraph 137.

138.    The allegations in paragraph 138 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 138.

139.    Meta denies each and every allegation in paragraph 139, including that this lawsuit is appropriate for class certification.

140.    The allegations in paragraph 140 refer to the relief sought by plaintiffs and putative class members in the FAC, which speaks for itself.  The allegations in paragraph 140 also contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 140.  Meta further denies that plaintiffs have suffered damages of any kind and that they are entitled to any form of relief from Meta, or that this case is appropriate for class certification.

## COUNT III

### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 632

141.    Meta hereby incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

142.    Meta admits that plaintiffs purport to bring this action individually and on behalf of the members of the purported class referenced in paragraph 142.  Meta denies that plaintiffs are entitled to any relief and that class certification is appropriate for this case.

143.    The allegations in paragraph 143 contain conclusions of law and purport to quote from Cal. Penal Code § 632, to which no responsive pleading is required.  To the extent a response is required, Meta admits that plaintiffs correctly quote in part Cal. Penal Code § 632.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 143.

Gibson, Dunn &
Crutcher LLP

144.    The allegations in paragraph 144 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 144.

145.    The allegations in paragraph 145 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 145.

146.    The allegations in paragraph 146 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 146.

147.    The allegations in paragraph 147 refer to the relief sought by plaintiffs and putative class members in the FAC, which speaks for itself.  The allegations in paragraph 147 also contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 147.  Meta further denies that plaintiffs have suffered damages of any kind and that they are entitled to any form of relief from Meta, or that this case is appropriate for class certification.

### COUNT IV

### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 635

148.    Meta hereby incorporates by reference its responses to the preceding paragraphs as if full set forth herein.

149.    Meta admits that plaintiffs purport to bring this claim individually and on behalf of the members of the nationwide class referenced in paragraph 149.  Meta denies that class certification is appropriate for this case.

150.    The allegations in paragraph 150 contain conclusions of law and purport to quote from California Penal Code § 635, to which no responsive pleading is required.  To the extent a response is required, Meta admits that plaintiffs correctly quote in part California Penal Code § 635.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 150.

Gibson, Dunn &
Crutcher LLP

151.    The allegations in paragraph 151 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 151.

152.    The allegations in paragraph 152 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta admits that the Meta Pixel is a free, publicly available piece of code that third-party developers can embed in their websites to measure visitor activity and share that data with Meta so that developers can better understand the effectiveness of their advertising, subject to Meta's Business Tools Terms, Data Policy (now known as Meta's Privacy Policy), Platform Policy, and Commercial Terms.  Except as expressly stated, Meta otherwise denies each and every allegation in paragraph 152.

153.    The allegations in paragraph 153 contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 153.

154.    The allegations in paragraph 154 refer to the relief sought by plaintiffs and putative class members in the FAC, which speaks for itself.  The allegations in paragraph 154 also contain conclusions of law, for which no responsive pleading is required.  To the extent a response is required, Meta denies each and every allegation in paragraph 154.  Meta further denies that plaintiffs have suffered damages of any kind and that they are entitled to any form of relief from Meta, or that this case is appropriate for class certification.

## **COUNT V**

## **Violation Of The Federal Wiretap Act, 18 U.S.C. § 2512**

155.    The allegations in paragraph 155 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

156.    The allegations in paragraph 156 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

157.    The allegations in paragraph 157 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

158.    The allegations in paragraph 158 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

159.    The allegations in paragraph 159 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

160.    The allegations in paragraph 160 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

161.    The allegations in paragraph 161 relate to Count V of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

## **COUNT VI**

### **Negligence/ Negligence Per Se**

162.    The allegations in paragraph 162 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

163.    The allegations in paragraph 163 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

164.    The allegations in paragraph 164 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

165.    The allegations in paragraph 165 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

166.    The allegations in paragraph 166 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

167.    The allegations in paragraph 167 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

168.    The allegations in paragraph 168 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

169.    The allegations in paragraph 169 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

170.    The allegations in paragraph 170 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

171.    The allegations in paragraph 171 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

172.    The allegations in paragraph 172 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

173.    The allegations in paragraph 173 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

174.    The allegations in paragraph 174 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

175.    The allegations in paragraph 175 relate to Count VI of the First Amended Complaint, which plaintiffs voluntarily dismissed on July 8, 2024.  (ECF No. 29).  Accordingly, no response is required.

## AFFIRMATIVE DEFENSES

Meta has not completed its full investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial.  The defenses asserted herein are based on Meta's knowledge, information, and belief at this time.  By asserting the defenses herein, Meta has not knowingly and intentionally waived any applicable defenses and hereby expressly reserves the right to assert any additional defenses, cross-claims, and/or third-party claims as may be appropriate at a later time.  Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of plaintiffs' claims, Meta asserts the following separate and additional defenses:

### FIRST SEPARATE AND ADDITIONAL DEFENSE

### (Laches / Waiver / Release/ Estoppel / Unclean Hands / Inequitable Conduct)

The FAC and the claims alleged therein are barred, in whole or in part, by the doctrines of laches, waiver, release, estoppel, unclean hands *in pari delicto*, and/or inequitable conduct.  Plaintiffs allege that they have Facebook accounts.  When Facebook users, including plaintiffs and putative class members, signed up for a Facebook account, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy.  These policies, as well as other publicly available materials (including Subject Websites' policies), disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes.  Further, since August 2019, plaintiffs and putative class members have had access to the Off-Facebook Activity tool, which allows Facebook users to view a summary of the apps and websites that send Meta information about the user's activity.  Plaintiffs' complaint is barred, in whole or in part, to the extent plaintiffs and putative class members had notice regarding the information Meta allegedly received about them from the Subject Websites, including (but not limited

1  to) through the aforementioned disclosures, and they continued to use Meta's and/or the Subject

2  Websites' services, and/or failed to diligently pursue their claims.

3  ## SECOND SEPARATE AND ADDITIONAL DEFENSE

4  ### (Failure to Mitigate)

5  Plaintiffs' and putative class members' claims for damages are barred, in whole or in part, to

6  the extent discovery reveals they failed to mitigate their damages.  For example, to the extent plaintiffs

7  and putative class members had notice regarding the information Meta allegedly received about them,

8  including but not limited to through Meta's Terms of Service, Privacy Policy, Cookies Policy, and Off-

9  Facebook Activity tool and/or the Subject Websites' policies and disclosures, yet continued to use

10  Meta's and/or the Subject Websites' services, they are bared, in whole or in part, from recovering

11  damages based on their continued use of Meta's and/or the Subject Websites' services.  Plaintiffs and

12  putative class members are also barred, in whole or in part, from recovering damages based on the

13  alleged disclosure of information that plaintiffs have publicized through other channels, such as social

14  media.  Plaintiffs and putative class members are also barred, in whole or in part, from recovering

15  damages to the extent plaintiffs and putative class members did not attempt to use settings that would

16  limit the information Meta associated with their Facebook accounts or the data Meta used for

17  advertising purposes.

18  ## THIRD SEPARATE AND ADDITIONAL DEFENSE

19  ### (Statute of Limitations)

20  The FAC and the claims alleged therein are barred, in whole or in part, by the statute of

21  limitations under applicable law.  The statute of limitations for plaintiffs' California Invasion of Privacy

22  Act claims is one year.  Cal. C.C.P. § 340(a).  Plaintiffs allege they have Facebook accounts and when

23  signing up for those accounts, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies

24  Policy which, along with other publicly available materials (including Subject Websites' policies),

25  disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes.

26  Plaintiffs' complaint is barred, in whole or in part, to the extent plaintiffs and putative class members

27  had notice regarding the information Meta allegedly received about them from the Subject Websites,

28  including (but not limited to) through the aforementioned disclosures, and they failed to bring their

claims within one year from when they had, or should have had, such notice.

## FOURTH SEPARATE AND ADDITIONAL DEFENSE

### (Barred by Contract)

The FAC and the claims alleged therein are barred, in whole or in part, by contracts and/or agreements entered into with Meta and with the Subject Websites which govern the subject matter of plaintiffs' and putative class members' claims. Plaintiffs allege that they had Facebook accounts. When Facebook users, including plaintiffs and putative class members, signed up for a Facebook account, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy. These policies disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes. Plaintiffs' complaint is barred, in whole or in part, because plaintiffs and putative class members agreed to Meta's receipt of the data the Subject Websites allegedly sent about them through their contracts with Meta. Plaintiffs' and putative class members' claims are also barred, in whole or in part, by the limitation-of-liability provision in Meta's Terms of Service. To the extent discovery reveals that plaintiffs entered into contracts with the Subject Websites, those contracts may also bar plaintiffs' claims, in whole or in part, for the same or similar reasons as Meta's contracts—*i.e.*, because they disclose that the Subject Websites share data with third parties such as Meta and/or because they limit plaintiffs' and putative class members' ability to recover for the alleged disclosure of their information.

## FIFTH SEPARATE AND ADDITIONAL DEFENSE

### (Mistake)

The FAC and the claims alleged therein are barred, in whole or in part, on the grounds that Meta reasonably relied on facts that may later prove to be false and/or made a bona fide error despite using reasonable procedures to avoid any such error. Meta's Business Tools Terms require third parties who use the Meta Business Tools to, among other things, "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations, and industry guidelines) for the disclosure and use of Business Tool Data." Meta reasonably relied on third parties using the Meta Business Tools to abide by the requirements and representation in the Business Tools Terms.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

**(Unjust Enrichment)**

The right to relief on behalf of plaintiffs and Class members is barred by the doctrine of unjust enrichment. Plaintiffs and putative class members would be unjustly enriched if allowed to recover the relief claimed to be due, including because plaintiffs and putative class members consented to the alleged conduct complained of, including by agreeing to Meta's Terms of Service, its Privacy Policy, and/or Cookies Policy. These policies, as well as other publicly available materials (including the Subject Websites' policies), disclose Meta's receipt of data through the Business Tools and its use of data for advertising purposes. Further, since August 2019, plaintiffs and the putative class members have had access to the Off-Facebook Activity tool, which allows Facebook users to view a summary of the apps and websites that send Meta information about the user's activity. The doctrine of unjust enrichment bars plaintiffs' and putative class members' right to relief to the extent they continued to use Meta's and/or the Subject Websites' services (and obtained the benefits of those services) despite having notice regarding the information Meta allegedly received about them from their interactions with third parties, including the Subject Websites. The doctrine of unjust enrichment also bars plaintiffs' and putative class members' right to relief to the extent plaintiffs and putative class members did not attempt to use settings that would limit the information Meta associated with their Facebook accounts or the data Meta used for advertising purposes.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Wrong Party)

The FAC and the claims alleged therein are barred, in whole or in part, because plaintiffs have filed suit against the wrong party. Plaintiffs have filed suit against Meta rather than the Subject Websites that use Meta's services. Meta's Business Tools Terms require third parties who use the Meta Business Tools to, among other things, "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations, and industry guidelines) for the disclosure and use of Business Tools Data." Meta reasonably relied on third parties using the Meta Business Tools to abide by the requirements and representations in the Business Tools Terms. Third parties who use the Meta Business Tools, including the Subject Websites, are responsible for how they choose to use the Meta

1    Business Tools.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

### (No Privacy Interest)

The FAC and the claims therein are barred, in whole or in part, because plaintiffs and putative class members do not maintain a legally protected privacy interest over any data plaintiffs allege to have been impermissibly collected. When Facebook users, including plaintiffs and putative class members, signed up for a Facebook account, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy. These policies, as well as other publicly available materials (including the Subject Websites' policies), disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes. Further, since August 2019, plaintiffs and putative class members have had access to the Off-Facebook Activity tool, which allows Facebook users to view a summary of the apps and websites that send Meta information about the user's activity. Plaintiffs' complaint is barred, in whole or in part, due to their inability to show a privacy interest in data they were on notice Meta allegedly received about them from the Subject Websites, including (but not limited to) through the aforementioned disclosures. Plaintiffs' complaint is also barred, in whole or in part, due to their inability to show a privacy interest in their web-browsing data, which is not sensitive or confidential.

## NINTH SEPARATE AND ADDITIONAL DEFENSE

### (Intervening or Superseding Cause)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because the damages alleged in the FAC, if any, were caused by persons and entities other than Meta. Such intervening and superseding conduct of others bars and/or diminishes recovery, if any, against Meta. Any alleged harm to the plaintiffs and putative class members was proximately caused by subsequent and intervening or superseding acts of plaintiffs or the putative class members and/or of third parties, including without limitation, by the Subject Websites' decision to use the Meta Business Tools and/or to configure the Meta Business Tools to transmit certain information to Meta. Meta's Business Tools Terms require third parties who use the Meta Business Tools to, among other things, "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations, and industry

Gibson, Dunn &
Crutcher LLP

28

guidelines) for the disclosure and use of Business Tool Data."  Meta reasonably relied on third parties using the Meta Business Tools to abide by the requirements and representations in the Business Tools Terms.   Therefore, any alleged harm to the plaintiffs was caused by the Subject Websites failure to abide by Meta's Business Tools Terms rather than any action Meta is alleged to have taken.

Additionally, plaintiffs allege that they have Facebook accounts.  When Facebook users, including plaintiffs and putative class members, signed up for a Facebook account, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy.  These policies, as well as other publicly available materials (including the Subject Websites' policies), disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes.  Further, since August 2019, plaintiffs and putative class members have had access to the Off-Facebook Activity tool, which allows Facebook users to view a summary of the apps and websites that send Meta information about the user's activity. To the extent plaintiffs and putative class members failed to read these disclosures, any alleged harm to the plaintiffs was caused by their failure to read these disclosures rather than any action Meta is alleged to have taken.  To the extent plaintiffs and putative class members did not attempt to use settings that would limit the information Meta associated with their Facebook accounts or the data Meta used for advertising purposes, any alleged harm to the plaintiffs was also caused by their failure to use these settings rather than any action Meta is alleged to have taken.

## TENTH SEPARATE AND ADDITIONAL DEFENSE

### (Party to Communications)

The FAC and the claims alleged therein are barred, in whole or in part, because Meta was a party to any and all communications Meta allegedly received, and therefore no actionable interception occurred.  The Meta Pixel is a free, publicly available piece of code that third-party developers can embed in their websites to measure visitor activity and share that data with Meta.  To the extent the Subject Websites or users shared data with Meta, Meta was a party to the relevant communications, and a party cannot be held liable for "wiretapping" or "eavesdropping" on its own communications. *Doe I v. Google LLC*, 2024 WL 3490744, at *5 (N.D. Cal. July 22, 2024); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023); *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008).  As a result, Meta is exempt from any wiretapping or eavesdropping liability under the

California Invasion of Privacy Act as a party to the communications at issue.

## ELEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Unconstitutional Request for Statutory and Punitive Damages)

Statutory, punitive, or exemplary damages should not be awarded or should otherwise be limited. That is because (1) any recovery of statutory or exemplary damages would violate the substantive and procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, by Article 1, Section 7 of the California Constitution, by section 3294 of the California Civil Code, and by the common law; and (2) imposition of any statutory, punitive, or exemplary damages would constitute an excessive fine or penalty under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the California Constitution. *See, e.g.*, *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 77 (1988).

## TWELFTH SEPARATE AND ADDITIONAL DEFENSE

### (Unconstitutional Aggregation of Statutory Damages)

Any aggregation of statutory damages should be barred or should otherwise be limited. This is because imposition of massively aggregated statutory damages on the scale of what plaintiffs and Class members seek would constitute an excessive fine or penalty under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the California Constitution. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022).

## THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Consent)

The FAC and the claims alleged therein are barred, in whole or in part, by the doctrines of consent and/or ratification because plaintiffs and putative class members manifested agreement through words and/or conduct to the sharing and/or use of their personal information as alleged in the complaint. Plaintiffs allege that they have Facebook accounts. When Facebook users, including plaintiffs and putative class members, signed up for a Facebook account, they agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy. These policies, as well as other publicly available materials (including the Subject Websites' policies), disclosed Meta's receipt of data through the Business Tools and its use of data for advertising purposes. Further, since August 2019, plaintiffs and putative class

members have had access to the Off-Facebook Activity tool, which allows Facebook users to view a summary of the apps and websites that send Meta information about the user's activity.  Plaintiffs' complaint is barred, in whole or in part, because plaintiffs and putative class members consented to Meta's receipt of the information Meta allegedly received about them from the Subject Websites, including (but not limited to) to the extent they viewed the aforementioned disclosures and they continued to use Meta's and/or the Subject Websites' services.

Dated:  May 12, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*

Lauren R. Goldman

*Attorney for Meta Platforms, Inc.*

Gibson, Dunn & Crutcher LLP